## BROWN *v.* THE STATE OF COLORADO.

(*Supreme Court of Colorado, April 22, 1881—Appeal from the District Court of Jefferson County.*)

A STATE MAY SUE WITHOUT STATUTORY AUTHORITY. It is accepted law, that a state, as a political corporation, may maintain, in its corporate name and in its own courts, actions for the enforcement of its rights or the redress of its wrongs independently of any statutory provisions therefor. The right springs from the general principle, that every person, whether natural or artificial, capable of making a contract or suffering wrong, may have an action to enforce the one and redress the other.

DISSEIZIN IS NOT NECESSARY TO THE ACTION SUBSTITUTED BY THE CODE FOR EJECTMENT. Disseizin, however it may have been formerly, is not necessary to the maintainance of the action substituted by the Code for ejectment. Disseizin implies an actual entry and actual adverse possession, which are not essential under the Code.

"THE STATE," AND "THE PEOPLE OF THE STATE," ARE EQUIVALENT EXPRESSIONS. The state, means the whole people united in one body politic, and "the state," and "the people of the state," are equivalent expressions.

A complaint brought in the name of "the state of Colorado" is in effect a suit in the name of "the people of the state," and is good on demurrer.

PRACTICE—ERRORS NOT CONNECTED WITH THE JUDGMENT APPEALED FROM CANNOT BE ENQUIRED INTO ON APPEAL.   If there was error in vacating a former judgment of nonsuit and granting a new trial, it was an error occurring in a former trial, the record of which is not before the court on this appeal.   If the error was allowed, it would go to a judgment other than the one appealed from.   Such error cannot be reached by this appeal.

CONSTRUCTION OF STATUTE.   The act of the legislature provided for the selection of grounds for capitol "within the city of Denver," and located the capitol "at the city of Denver."   The ground conveyed by the appellant was sixty feet south of the corporate limits of the city; *Held*, when the construction of a statute is not an unreasonable one, and parties having acted upon it and acquised in it for a long time, justice requires that the courts, for the maintainance of property rights under it, should uphold the construction given by the parties.

ACCEPTANCE OF DEED.   The possession of a deed and its record are *prima facie* evidence of its delivery and acceptance, and no other or further evidence is necessary.

CONDITION SUBSEQUENT, does not work a forfeiture of property conveyed by a deed until there is an actual breach.   Conditions of forfeiture in grants are not favored and will not readily be implied.   They must be created by express terms or clear implication, and construed strictly, because they tend to destroy estate.

EVIDENCE—PAROL TO VARY CONSIDERATION STATED IN DEED.   For some purposes the consideration of a deed may be shown to be different from that which is expressed.   But the rule is, that this cannot be allowed for the purpose of avoiding the deed or varying its effect.

ELBERT, C. J.   This action was brought by the state to recover possession of certain real property known as the "capitol grounds," situated in the city of Denver.   The state had judgment below, and Brown appealed.

It is assigned for error, (1) "That the state cannot maintain a civil action in the nature of ejectment, or the action provided for in the Code, of that nature to try the title to land."

It is accepted law that a state, as a political corporation, may maintain, in its corporate name and in its own courts, actions for the enforcement of its rights or the redress of its wrongs, independently of any statutory provision therefor.   The right springs from the general principle that every person, whether natural or artificial, capable of making a contract or suffering wrong, may have an action to enforce the one and to redress the other.   1 Dillon Mun. Corp., 106; *the People* v. *the City of St. Louis*, 5

Gil., 366; *Delafield* v. *State of Illinois*, 2 Hill, 162; *State of Indiana* v. *Warman*, 6 Hill, 36.

The proposition is broad, and embraces in its general terms any and every form of action. In any given case, the nature of the right to be enforced or the wrong to be redressed would determine the appropriate action. If the state, in a proper case, may not maintain ejectment, then it is an exception to the general rule.

The claim is that disseizin is essential to the action; that the state cannot be disseized, and, therefore, cannot maintain the action.

If we do not discuss the conclusion drawn from these premises, it is not because we admit it. On the other hand, we seriously doubt the propriety of a rule which allows a defendant to plead a prerogative of the state to protect himself in a wrong against the state. There is, however, a fault in the premises that is fatal to the proposition. Disseizin, however it may have been formerly, is not necessary to the maintenance of the action substituted by the Code for ejectment. Disseizin implies an actual entry and actual adverse possession. Disseizin of things corporal, as of houses, lands, etc., must be by entry and actual dispossession of the freehold, as if a man enters by force or fraud into the house of another, and turns, or at least keeps him and his servants out of possession. Bouvier's Law Dic.

Under the provisions of the Code, an actual entry or actual adverse possession is not essential.

By Sec. 248 it is provided, " If the premises are not actually occupied, the action may be brought against any person exercising acts of ownership on or over the premises claimed, or who *claims title* thereto, or *some interest* therein, at the time of the commencement of the action."

By this section, an adverse claim of title to, or interest in, the premises is sufficient to support the action.

Under a similar provision in the New York Code, it is held that ejectment for premises not actually occupied may be brought by one claiming title at the commencement of the suit, though his claim has been manifested *by words* merely. (*Bayer et al.* v. *Easpie*, 5 Hill, 48; *Child* v. *Chaprell*, 9 New York, 246.) It is also held that, although the averments of prior possession and ejectment are made in the declaration, it is not necessary to

prove them, as they are merely formal. Tyler on Ejectments, 616, and cases there cited.

We must accordingly hold that, as against this objection, the action is maintainable by the state.

It is assigned, (2) That the plaintiff has no legal capacity to sue.

The point made is, that the complaint is entitled "The State of Colorado, Plaintiff," etc., instead of "The People of the State of Colorado," in which name all process is required to run, by Sec. 30, Art. VI, of the constitution. To this it is only necessary to say, that "the state" means the whole people united in one body politic, and "the state" and "the people of the state" are equivalent expressions. *Penhollow* v. *Doane*, 3 Dal., 93; 1 Story's Con., Sec. 361.

It is assigned, (3) The court erred in overruling defendant's demurrer to plaintiff's complaint.

The principal points raised by the demurrer were the two which we have just considered, and if the views we have already expressed are correct, the demurrer was properly overruled.

It is assigned, (4) The court erred in vacating the judgment of nonsuit and granting a new trial on plaintiff's motion.

Judgment of nonsuit was entered in a trial had before Judge Bowen at the January term, 1880, of the district court for the county of Arapahoe, at which time plaintiff gave notice of a motion for a new trial. At the succeeding March term of the court this motion was heard and a new trial granted. At the same term the venue of the cause was changed to the county of Jefferson, in the First district. Afterward, at the April term of the district court for the county of Jefferson, a trial was had before Judge Mitchell, which resulted in a judgment for the plaintiff. This is the judgment appealed from, and the errors of which we are called upon to review. If there was error in vacating the judgment of nonsuit and granting a new trial, it was an error occurring in a former trial, the record of which is not before us. If the error was allowed, it would go to a judgment other than the one appealed from. The pleadings in the case and the proceedings on the new trial constitute the record we are reviewing. An error occurring in a former trial must be reached in some other way.

It is assigned, (5) The court erred in overruling the defendant's motion for nonsuit.

All the questions embraced in the motion for nonsuit are considered under other assignments, for which reason it is not necessary to consider them under this.

It is assigned, (6) The court erred in receiving in evidence on behalf of the plaintiff the deed from defendant Brown conveying the premises in dispute to the territory of Colorado.

Four objections are urged to the admissibility of the deed:

(1) Because the lands conveyed are not "within the city of Denver," as required by the act of the legislature. Revised Statutes, 90, Secs. 3, 8.

Sec. 1 of this act located and established the seat of government at Denver.

Sec. 2 provided for the appointment of three commissioners on behalf of the territory to select a site within the city of Denver for the capitol of said territory.

Sec. 3 directs that the commissioners shall, within sixty days, "proceed to select a site for the capitol of said territory within the said city of Denver, which site shall contain not less than ten acres of land," etc.

Whether the site conveyed was within the corporate limits of the city of Denver at the date of the conveyance in 1868, does not appear, except in so far as a presumption may be indulged that the limits prescribed by statute in 1866 (Ses. Laws, 1866), two years prior to the conveyance, remained unchanged. This presumption is not very strong, in view of the fact, that the limits as prescribed by the act were liable, under the provisions of Sec. 3 of the act, to be changed at any time by any owner of adjoining lands surveying, platting and recording an addition to the city.

Accepting the presumption, however, as legitimate, we find that the site, situated and conveyed, was sixty feet south of the city limits, as prescribed by the act of 1866. This certainly is not a very wide departure from the directions of the act, if we were to accept the construction that the site was to be within the corporate limits of the city.

This construction, however, is by no means a necessary one.

By Sec. 1 the legislature located the seat of government "at Denver." Did they mean anything else in Secs. 2 and 3, where

they use the phrase "within the city of Denver?" Would not any more definite intention have been more definitely declared? In view of the nature of the act to be done, the necessity not only for a convenient, but also an appropriate and fitting site for capitol buildings, the difficulty of securing so large a body in any platted city—the construction is not an unreasonable one. This was evidently the construction put on the act by the appellant Brown and the commissioners, for the deed recites the title of the act, and declares the conveyance made in pursuance thereof. Three propositions may be stated:

*First*—If the construction was erroneous and the site selected therefore not within the intent of the act, it was for the state to object; not having objected, but on the other hand having acquiesced in the selection for a long term of years, the state is to be taken as having adopted and ratified not an illegal act but the construction of the law put upon it by its public agents, and which brought the site selected within the intent and meaning of the law.

*Second*—If Brown was acting in good faith at the date of the conveyance, and we take it for granted he was, this was the construction which he placed upon the law, for his conveyance is made "in pursuance of the act." Having acted under this construction, having acquiesced in it for a long period of years in common with the state, and having received the presumable benefits arising from such location on his land, he is not at liberty to abandon it at pleasure and to insist upon another construction which would avoid his conveyance.

*Third*—When a construction of a statute is not an unreasonable one, and parties have acted upon and acquiesced in it for a long period of time, justice requires that courts for the maintainance of property rights acquired under it, should uphold the construction given by the parties.

It is objected to the deed (2) that "there was no acceptance of the donation, either express or implied."

The possession of the deed and its record are *prima facie* of its delivery to, and acceptance by the commissioners, (2 Greenleaf Ev., Sec. 29,) and no other or further acceptance was necessary.

The act itself accepts the property upon the conveyance being made in pursuance of its provisions. It says: "If the site so selected shall be conveyed to the territory of Colorado          *

\*     \*     so as to vest the title for the same absolutely and in fee simple in said territory, the site so selected shall be and remain the property of said territory," etc.     \*     \*     \*

It is objected (3) that there was no evidence of a performance of the condition mentioned in the deed and the act under which the deed was made.

Section 3 is as follows: "The persons appointed     \*     \*     \*     shall, within sixty days,     \*     \*     \*     proceed to select a site for the capitol of said territory within said city of Denver,     \*     \*     \*     and if the site so selected shall be conveyed to the territory of Colorado by the person or persons holding the title thereto without charge to said territory, and so as to invest the title to the same absolutely and in fee simple in said territory, the site so selected shall be and remain the property of said territory for the purpose of erecting a capitol and other public buildings thereon."

The conveyance of Brown recited, "the said land being so conveyed to said territory in pursuance of an act entitled, an act to locate the seat of government of the territory of Colorado     \*     \*     \*     so as to vest the title to the same absolutely and in fee simple in said territory, and to remain the property of said territory, for the purpose of erecting a capitol and other public buildings thereon only."

If any condition exists here, it is a condition subsequent. A condition subsequent is one operating on an estate already created and vested, and rendering it liable to be defeated. Whether the proper interpretation of the language of the conveyance, with reference to the statute, would result in a decision that it was absolute and unconditional, or upon a condition subsequent, which, upon location and erection of capitol buildings elsewhere, would work a forfeiture, it is not necessary to say.

If we accept the theory of appellant, and treat the conveyance as conditional, the only condition expressed relates to the use of the premises, *i. e.*, "for the purpose of erecting capitol and other public buildings thereon only." There is no pretense that there has been a forfeiture by use of the ground for other purposes than those specified.

The proposition that "the provision in the constitution for submitting the question of the permanent location of the seat of government to the qualified electors of the state," works a forfeit-

ure in advance of any action under it, need not be argued. Until the election provided for, the constitution continues the seat of government at Denver, and the election may have no other result. But whatever the result may be, as yet there is no act of forfeiture under this constitutional provision. This is the only express condition of the deed, and of this there has been no breach.

The appellant claims that the failure of the state to commence the erection of capitol building on the site is a breach of the conditions of the deed. If so, it is a breach of an implied, and not of an express condition, for nowhere do we find any time limited within which capitol buildings must be commenced or completed.

It is a rule of law that conditions of forfeiture in grants are not favored and will not be readily implied. 2 Par. Con., 526. They must be created by express terms or clear implication, and are construed strictly. 2 Wash. R. P., 447. Says Mr. Kent, "they are to be construed with great strictness, because they tend to destroy estates, and the rigorous exaction of them is a species *summum jus*, and in many cases hardly reconcilable with conscience." 4 Kent's Com., 130.

In New York it is held that conditions cannot be sustained by inference or recital. *Woodworth* v. *Payne*, 74 New York, 198. That there must be some words which *ex vi termini* import that the vesting or continuance of the estate is to depend upon the supposed condition. *Craig* v. *Wells*, 11 New York, 320.

No words are to be found in the deed of Brown which indicate any intention to limit or fix the time within which the state is to commence the erection of its capitol buildings. The language of a deed is to be construed most strongly against the grantor and beneficially for the grantee. It is the language of the grantor, and the principle of self-preservation and self-interest are supposed to make him sufficiently careful not to prejudice his own interest. Broom's Leg. Max., 594.

The deed being entirely silent upon the subject, the clear and rational construction is, that the grantor was willing to leave the time for commencing its public buildings to the determination of the state. If such was not the intention, it is the grantor's own fault that such a condition was not inserted in the deed.

This court cannot, upon some supposed hardship, defeat an estate by implying a condition which the grantor has not ex-

pressed, nor in the least intimated by the language of his conveyance.

If it can be said, as is claimed, that there is an implied condition that the state should commence and erect its buildings within a reasonable time, I do not see that any other result can be arrived at.

Capitol buildings are usually large structures, requiring large sums for their construction, and involving increase of the public indebtedness. When a young state is sufficiently strong financially for such an expenditure, is a question for its prudent statesmanship to determine, looking to the best interests of the public. Rented government buildings served the purpose of the territorial government, as they have and do serve the purpose of our present state government, and who shall say that both territorial and state legislatures have not acted wisely and prudently in this postponement of an undertaking which would largely increase the public burthens? Who shall say that there has been a delay for an unreasonable time, having reference to our sparse population, slender revenues, and other prudential considerations which control legislation in the public interest?

When the grantor failed to insert in his conveyance, for his own protection, a condition fixing a time within which the state should act in this matter, he thereby tacitly subordinated his individual interests, not, perhaps, to the mere will and pleasure of the state, but certainly to the interests of the state, and if any condition of reasonable time can be implied, it must be measured largely, if not exclusively, by the interests of the public.

To imply a condition that would require the state to build within a reasonable time, having reference to the individual interests of the grantor, would be to make to that extent a contract for the parties.

Tested by this rule, we are not able to say that the state has unreasonably delayed the erection of capitol buildings.

The fourth objection to the deed is based on the supposed effect of the constitutional provision submitting the location of the seat of government to a vote of the people, and has already been considered. The same considerations are applicable to the further claim, that the territory could not accept the grant because, under Sec. 12 of the organic act, any subsequent legislature had the power to change the seat of government to some

other place. This is nothing more than saying that the grantee could not take because it had the power to forfeit the grant by breach of the conditions. Such a power in the grantee is pre-supposed in every conditional grant, otherwise there would be no necessity for a condition. The objections urged against the admissibility of the deed were not well founded, and it was properly received as evidence of the plaintiff's title.

It is assigned, (7) "The court erred in refusing to allow defendant, Brown, to show that the consideration of $1,000, acknowledged as received in the deed, .* * * was other than actual money."

For some purposes, the consideration of a deed may be shown to be different from that which is expressed. But the rule is, that this cannot be allowed, for the purpose of avoiding the deed, or varying its effect. Mr. Washburn states the rule as follows:

"Although it is always competent to control the fact stated in the deed as the amount or thing paid, in a question involving the recovery of the purchase money, or as a measure of damages in actions upon covenant in the deed, it is not competent to contradict the acknowledgment of a consideration paid in order to affect the validity of the deed in creating or passing a title to the estate thereby granted," etc. 3 Wash. R. P., 614.

Again, he says, "the true doctrine is stated in *Grant* v. *Townsend*, 2 Hill, 554, that when a deed acknowledges the receipt of a consideration, the grantor and all claiming under him are estopped from denying that one was paid. They may disprove the payment for the purpose of recovering the consideration money, but they cannot do so for the purpose of destroying the effect and operation of the deed." *Ib.*, 619.

The authorities cited by the counsel for appellants lay down no different doctrine.

There was no error in excluding the evidence.

We have thus considered all the questions raised by the record which we deem entitled to notice.

The same questions are not infrequently presented in several forms and at different stages of the trial, but the views we have expressed are equally applicable in whatever form the questions may have arisen.

The sum of the matter is this:   On the 11th day of January, 1868, the appellant Brown, for a valuable consideration, granted, bargained, sold and conveyed to the territory of Colorado the premises in dispute by a good and sufficient deed, duly sealed, signed and acknowledged, in accordance with all the forms of law.   We find no good reason for not enforcing the rights of the state under this deed.   In dealing with it, we are governed by certain well settled rules.   It must be interpreted "that the matter may be of validity sooner than be lost," or, as the maxim runs, *ut res magis valeat quam pereat.*   Such a meaning must be given it as may carry out and effectuate to the fullest extent the intention of the parties.   (Broom's Leg. Max., 541*.)   If it contains express conditions, they are to be construed *stricti juri.*   4 Kent, *supra.*

If conditions are to be implied, it must be with caution, upon clear grounds, and from words which, *ex vi termini*, import that the vesting or continuance of the estate is to depend upon the supposed condition.   *Craig v. Wells*, 11 N. Y., 321.

We do not decide that the deed is conditional, but, for the purpose of this case, we have treated it as conditional, and find no sufficient ground for saying that the grant has been defeated or forfeited by reason of a breach of its supposed conditions, either express or implied.

The judgment of the court below is affirmed.

*Judgment affirmed.*

*C. W. Wright*, Attorney General, for the State.

*Browne & Putnam*, for appellant.