(No. 11220.—Judgment affirmed.)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* WILLIAM H. SNYDER, Plaintiff in Error.

*Opinion filed June 21, 1917—Rehearing denied October 3, 1917.*

1. CRIMINAL LAW—*indictment must allege all the facts constituting the crime.* An indictment must allege all of the facts necessary to constitute the crime with which the defendant is charged, and an indictment which does not set forth such facts with sufficient certainty will not support a conviction.

2. SAME—*indictment of accessory before the fact must contain allegation charging defendant as principal.* An indictment of an accessory before the fact must contain an allegation charging the defendant as principal, but if the crime, with the attendant facts, is sufficiently described in the body of the indictment and the words "as aforesaid" are used in charging the defendant as principal, it is not necessary to repeat the facts in the concluding part.

3. SAME—*court will take judicial notice of the political subdivisions.* State courts will take judicial notice of the divisions of the United States into States, and of their own State into counties, cities and towns, and of the corporate character of civil divisions of the State.

4. SAME—*term "body politic," in section 104 of the Criminal Code, construed.* The term "body politic," as used in section 104 of the Criminal Code, regarding falsely personating another in judicial proceedings, includes the State of Illinois, and an indictment concluding that the People of said State were injured need not aver that they are a body politic.

5. REHEARING—*questions not raised in briefs cannot be raised in the petition for rehearing.* Questions not raised in the original briefs of the parties filed in the Supreme Court cannot be considered when raised in the petition for rehearing.

WRIT OF ERROR to the Circuit Court of Macon county; the Hon. WILLIAM K. WHITFIELD, Judge, presiding.

REDMON, HOGAN & REDMON, and WHITLEY & FITZGERALD, for plaintiff in error.

EDWARD J. BRUNDAGE, Attorney General, JESSE L. DECK, State's Attorney, C. W. MIDDLEKAUFF, and CHAS. F. EVANS, for the People.

Mr. CHIEF JUSTICE CARTER delivered the opinion of the court:

At the October term, 1916, of the Macon county circuit court the grand jury returned an' indictment against plaintiff in error and also against John Parks and Clifton C. Richardson. The indictment charged all three with a violation of section 104 of the Criminal Code of this State, which provides, substantially, that every person who shall falsely represent or personate another and in such assumed character do any act in the course of any suit, proceeding or prosecution whereby any person or body politic may be injured in any event or his rights or interests may in any manner be affected, shall be imprisoned in the penitentiary, etc. The indictment originally contained three counts. The first and second counts, on motion of the defendants, were quashed. Afterwards Parks and Richardson entered pleas of guilty and were by order of the court released on probation prior to the time of plaintiff in error's trial, and both testified as witnesses on behalf of the State against plaintiff in error, Snyder.

It is·insisted that the third count of the indictment, upon which plaintiff in error was tried, was°not sufficient to sustain the conviction. The evidence in the record showed that plaintiff in .error, Snyder, had become surety on the bond of Frank Davis, who was the defendant under an indictment charging him with burglary and larceny, pend-

ing in said circuit court; that Davis did not appear for trial
and that a forfeiture was taken upon his bond. The evi-
dence of Parks and Richardson, who pleaded guilty and
were released upon probation, tended to show that Snyder
requested Parks to procure some person to represent Davis
and to enter a plea of guilty in Davis' case, and that Sny-
der agreed that he would then get the person who so en-
tered a plea of guilty released on parole; that Parks be-
came acquainted with Richardson, who until that time was
a stranger to him, and that Parks induced Richardson to
falsely represent to the State's attorney and the court that
he was Davis and to enter a plea of guilty in the Davis
case, and that after the plea of guilty was so entered the
forfeiture of the Davis bond, which had been signed by
Snyder, was set aside.

The third count of the indictment under which plaintiff
in error was tried, charged, in substance, that on June 10,
1916, there was pending in the circuit court of Macon
county, Illinois, a case entitled *People* v. *Davis,* wherein
the indictment charged said Davis with burglary and grand
larceny, and that William H. Snyder and John Parks did
procure Clifton C. Richardson to falsely represent himself
to be the defendant, Davis, and in such assumed charac-
ter to appear in said court and enter a plea of guilty in
the suit then 'and there pending against Davis, and that
Richardson did so appear and falsely represent himself to
be Davis, the indictment concluding: "And so the grand
jurors aforesaid, upon their oaths aforesaid, do present that
the said William H. Snyder, John Parks and Clifton C.
Richardson did then and there, in the said suit and proceed-
ing in the said court, while the said suit was then and there
pending in the said court, as aforesaid, unlawfully, feloni-
ously and falsely personate the said Frank Davis, whereby,
and by reason of the said false personation as aforesaid,
the said People of the State of Illinois were then and there
and thereby injured in the administration of public justice,

contrary to the form of the statute in such case made and
provided and against the peace and dignity of the said Peo-
ple of the State of Illinois."

Counsel for plaintiff in error insist that the concluding
part of the indictment is faulty in omitting one element
of the crime,—that is, that any act was done by plaintiff
in error, Snyder, by which any person or body politic was
injured. Section 6 of division 11 of the Criminal Code of
this State declares that every indictment shall be sufficient
which states the offense in the terms and language of the
statute creating the offense or so plainly that its nature may
be easily understood by the jury. It is a fundamental rule
of criminal pleading that an indictment must allege all of
the facts necessary to constitute the crime with which the
defendant is charged, and an indictment which does not set
forth such facts with sufficient certainty will not support
a conviction. (*People* v. *Trumbley,* 252 Ill. 29.) The
pleader may, if he chooses, however, state the circumstances
of the offense as in an indictment against an accessory be-
fore the fact, yet the indictment must contain an allegation
charging the defendant as principal. In this State an ac-
cessory before the fact may be indicted and punished as
principal, and it is the ordinary practice to indict as prin-
cipal an accessory before the fact. (*People* v. *VanBever,*
248 Ill. 136.) "Perhaps it would be advisable to describe
the circumstances of the offense as they actually transpired,
as it is an indictment against an accessory before or at the
fact; but if the stating part of the indictment be that way
it should conclude as for murder, for that is really the of-
fense of which the party is guilty, if at all." (*Baxter* v.
*People,* 3 Gilm. 368.) Indeed, accessories before the fact
must be indicted as principals, or not at all, after they are
declared by the Criminal Code to be principals. (*Usselton*
v. *People,* 149 Ill. 612; *Fixmer* v. *People,* 153 id. 123.)
Without question the pleader in this indictment intended to
set out the facts charging plaintiff in error as an accessory

before the fact, and then, in the concluding part of the indictment quoted above, to charge him as a principal. It is sufficient if the words of the indictment so far particularize the offense that the defendant is notified, with reasonable certainty, of the precise offense with which he is charged. (*People* v. *Scattura,* 238 Ill. 313, and cited cases.) It seems to us from a reading of said third count that no one could be misled as to the crime with which plaintiff in error was charged. It sets out clearly that plaintiff in error and one Parks induced Richardson to impersonate one Davis and plead guilty to the crime of burglary and grand larceny for which Davis was under indictment. If we understand the argument of counsel for plaintiff in error on this point, it is conceded that these facts were aptly set out in the body of the indictment, but it is argued that they should have been again stated in the concluding part of the indictment,—that is, that the plaintiff in error, Snyder, and Parks and Richardson, should all have been charged in the concluding part of the indictment, in apt terms, with the act of impersonation. We do not think the rules of pleading or the statute requires re-statement of all these facts in the concluding portion of the indictment. The words in the concluding part, "as aforesaid," plainly refer back to the body of the indictment, where the indictment described in detail the manner and method in which the impersonation was acted out by the three defendants. We think such objection to the indictment was properly overruled.

It is further argued by counsel for plaintiff in error that the indictment is not sufficient because it does not allege that the People of the State of Illinois are a body politic. The statute under which this indictment was drawn,—that is, section 104 of the Criminal Code,—states, as already noted, that if any person falsely represents or impersonates another in doing any act in the course of any suit, proceeding or prosecution, whereby any person or body politic may be injured, etc. The indictment charges the offense,

and concludes, after alleging the facts upon which the indictment was based, "the said People of the State of Illinois were then and there and thereby injured in the administration of public justice, contrary to the form of the statute in such case made and provided and against the peace and dignity of the People of the State of Illinois." If the People of the State of Illinois are properly understood and described to be a body politic then there is nothing in this objection. It is not necessary to state a conclusion of law resulting from the facts of a case. It is sufficient to state the facts and leave the court to draw the inferences. (Wharton on Crim. Pl. & Pr.—9th ed.—sec. 154.) It is not necessary that there should be an express averment of matter which appears by necessary implication from that which is expressed. (Joyce on Indictments, sec. 273.) State courts will take judicial notice of the divisions of the United States into States, and of their own State into counties, cities and towns, and of the corporate character of civil divisions of the State. (7 Ency. of Evidence, 970, 972.) A fact of which judicial notice is taken need not be pleaded or proved. (Ibid. 1033, 1034.) A body politic is defined to be "the collective body of a nation or State as politically organized or as exercising political functions." (8 Corpus Juris, 1137.) "Body politic" is defined by lexicographers as the State or nation as an organized political body of people collectively. (New Standard Dict.; Webster's New Int. Dict.) " 'The State' means the whole people united in one body politic, and 'The State' and 'The People of the State' are equivalent expressions." (*Brown* v. *State,* 5 Col. 496; see, also, *Penhallow* v. *Doane,* 3 Dall. 53.) The opening clause of the constitution of 1870 reads: "We, the People of the State of Illinois, * * * do ordain and establish this constitution," etc. Judge Cooley in his Constitutional Limitations (7th ed. p. 59,) says: "The people, in the legal sense, must be understood to be those who by existing constitution are crowned with politi-

cal rights, and who, while that instrument remains, will be
the sole organs through which the will of the body poli-
tic can be expressed." A judge of this court has defined
a State to be "the whole people embraced in a prescribed
territory, united into one body politic for the purpose of
mutual protection," etc. (*Wabash, St. Louis and Pacific
Railway Co.* v. *People,* 105 Ill. 236.) The constitution of
1870 (art. 6, sec. 33,) provides that all process shall run
in the name of the People of the State of Illinois and all
prosecutions shall be carried on in that name. Section 11
of article 4 of the constitution provides that the style of
all the laws shall be: "Be it enacted by the People of the
State of Illinois." In suits at law begun in behalf of the
State of Illinois the plaintiffs in those suits have the style
"The People of the State of Illinois." (*People* v. *Pierce,*
1 Gilm. 553; *People* v. *Hamill,* 259 Ill. 506.) When said
section 104 of the Criminal Code refers to "body politic"
with reference to unlawful personations, and the body poli-
tic turns out to be the State of Illinois, it means, of course,
the State in its sovereign, corporate capacity, only. When
the indictment concludes that the People of the State of
Illinois were then and there and thereby injured, it means,
beyond question, the people in their political, sovereign ca-
pacity. The indictment correctly named the body politic
that was injured by the violation of the statute upon which
the indictment was based and met all the requirements of
the law on the point here under consideration.

Counsel for plaintiff in error further argue that instruc-
tions given on behalf of the People, especially with refer-
ence to the meaning of reasonable doubt, were misleading
and argumentative. They do not seem to contend that any
specific instruction on that subject was erroneous but that
all together they magnified the question of reasonable doubt
and necessarily misled the jury,—that is, as was said in
*People* v. *Cotton,* 250 Ill. 338, it is objected that the duty
to instruct on that subject was overdone. The instructions

here, as there, consisted of statements made by the courts ᐧ at different times in efforts to explain the meaning of the words. Every one of these instructions objected to has been at various times especially sanctioned by this court. If every instruction, considered by itself, was in accordance with the law they certainly would not be objectionable when taken in the series. We have held, however, that the giving of numerous instructions as to reasonable doubt was not good practice. *People* v. *Wallace,* (*ante,* p. 139.) ᐧ

Counsel for plaintiff in error especially object to instruction 19 given for the People with reference to the credibility of plaintiff in error, because it singles out the defendant as a witness and argues with the jury that they should consider his demeanor on the stand, and the fact, if such was the fact, that he had been contradicted by other witnesses. This instruction, substantially in the same wording, has been approved by this court. See *People* v. *Tielke,* 259 Ill. 88; *Hirschman* v. *People,* 101 id. 568; *Rider* v. *People,* 110 id. 11; *People* v. *Scarbak,* 245 id. 435.

We find no reversible error in any of the instructions or in the instructions considered as a series.

Counsel for plaintiff in error further insist that a remark the court made in striking out a certain part of an answer by plaintiff in error was prejudicial. Plaintiff in error was asked the following question: "If you said anything to him about the State's attorney being fixed, and the parole officer and the court, tell the jury." He answered: "No, sir; I did not say anything of the kind; there was not anything mentioned about that; I would have been a foolish man to have sent anybody over there." Counsel for the People objected and moved that the last part of the answer be stricken. The court then said, "The foolish part will be excluded." The argument of counsel is that this remark of the court reflected upon the witness' testimony and would tend to prejudice his case. We think this objection is without force.

Counsel for plaintiff in error argue earnestly that the evidence is not sufficient to support the verdict. The evidence as to the guilt of the plaintiff in error was sharply conflicting. Upon controverted questions of fact courts of review are reluctant to substitute their opinion for that of the jury, and will not do so unless it clearly appears that the jury found contrary to the weight of the evidence. (*Parsons* v. *People,* 218 Ill. 386; *Henry* v. *People,* 198 id. 162; *People* v. *Hubert,* 251 id. 514.) It is argued that the only evidence showing the guilt of plaintiff in error was by his accomplices who had pleaded guilty and were let out on probation, and that their evidence should be viewed with suspicion. There is no conflict in the testimony as to Davis having been indicted for burglary and grand larceny and that plaintiff in error had gone on his bond, or that he talked with Parks and Richardson about Richardson pleading guilty. Neither is there any conflict in the testimony that plaintiff in error had been energetically endeavoring to look up Davis after his bond had been forfeited and that he had offered rewards for the finding of Davis. There is no question that he gave Parks a small sum of money for bringing in Richardson, and that all the acts of plaintiff in error in the matter were consistent with the stories told by Parks and Richardson and that his own story is not entirely consistent. The evidence shows, without contradiction, that Snyder had been trying to find Davis for some time and that Richardson was brought in by Parks and introduced to Snyder as Davis on Saturday night. Knowing these facts, why should he permit Richardson to go at large until Monday morning without any effort to have him taken into custody by the public authorities if he thought Richardson was Davis? The evidence also tends to show that he took no pains himself to see that Richardson plead guilty as Davis but was willing to trust all that to Parks and Richardson, and that he afterwards saw Richardson in the jail after he had plead guilty and talked with

him about how soon he would get out if he went to Pontiac and was a good boy and behaved himself. From this record we think the verdict was justified by the evidence.

The judgment of the circuit court will be affirmed.

*Judgment affirmed.*

On petition for rehearing the following additional opinion was filed:

Per CURIAM: Counsel for plaintiff in error urge many reasons why the opinion adopted by this court at the last term of court was incorrect. Among others, that the trial court erred in refusing to allow a former attorney of Richardson's to testify that Richardson had told him that he knew plaintiff in error had offered a reward of $300 or $100 for the finding of Davis, the real defendant, and that Richardson, on cross-examination on this trial, had denied that he knew such a reward had been offered. Without going into the question as to whether the attorney's testimony was proper for impeaching purposes on the trial, we deem it sufficient to say that this question was not raised in the original briefs of plaintiff in error in this court. The rule of this court has been for many years that questions not raised in the original briefs in the trial of a case in this court cannot be brought to the attention of the court for the first time on petition for rehearing. The reason for this practice on this question is self-evident. The cause should not be heard by piecemeal. All the points that counsel desire to rely on in any case, criminal or otherwise, should be raised in the original hearing in this court. This question was not referred to in any manner, either in the statement, brief or argument of counsel for plaintiff in error, on the original hearing in this case, and therefore can not be raised for the first time on the petition for rehearing.

The petition for rehearing is denied.

*Rehearing denied.*