WIESENTHAL, TRUSTEE, APPELLANT, *v.* WICKERSHAM, APPELLEE.

(Decided March 11, 1940.)

*Messrs. Schanfarber & Schanfarber* and *Mr. Maurice K. Topson,* for appellant.

*Mr. Thomas J. Herbert,* attorney general, *Mr. Fred W. Edmonston* and *Mr. David M. Spriggs,* for state treasurer.

BARNES, J. The above-entitled cause is now being determined on plaintiff's appeal on questions of law from the judgment of the Municipal Court of the city of Columbus, Ohio.

On the first day of August, 1939, a judgment was taken by the plaintiff against the defendant, H. L. Wickersham, in the amount of $480.48. Thereafter, the judgment not having been paid, an affidavit in aid of execution was filed to subject the earnings of the defendant, who was at the time an employee of the Civil Service Commission of Ohio, to the payment of the judgment.

Garnishee process was duly issued to the treasurer of the state of Ohio ordering him to appear and answer under oath as to any sum of money coming to the defendant by reason of his state employment.

Defendant did not appear in opposition to the judgment, or any of the proceedings thereafter instituted.

On September 9, 1939, the attorney general of the state of Ohio, appearing for the treasurer of state, interposed a motion to set aside the order in aid of execution and to discharge the treasurer of the state of Ohio from any liability thereunder. Upon hearing, the Municipal Court sustained the motion to dismiss the treasurer of state from such proceedings, to which ruling plaintiff gave notice of appeal on questions of law.

The record and briefs submit the single legal question:

"Can the salary of a state employee be garnisheed?"

The importance of the question submitted is well recognized, and counsel representing the respective parties have presented very able and comprehensive briefs.

The attorney general presents two arguments against the subjection of state employees' salaries to garnishment process, as follows:

"1. That garnishment statutes do not authorize the use of such process against the state, its officers, employees or agents, and

"2. That the state, its officers, employees and agents are not subject to the process of garnishment because of public policy."

Under the common law an action could not be brought against the Crown. This principle had its inception upon the tradition "that the king can do no wrong." This ancient principle is carried into our law, and, in the absence of constitutional authority, the state may not be sued. The people of the state of Ohio, and in many other jurisdictions of the United States, recognizing the fallacy of the ancient doctrine, have provided through the Constitution that the state, under certain conditions, may be sued.

Section 16, Article I of the Constitution of the state of Ohio reads as follows:

"All courts shall be open, and every person, for an injury done him in his land, goods, person, or reputation, shall have remedy by due course of law, and shall have justice administered without denial or delay. *Suits may be brought against the state, in such courts and in such manner, as may be provided by law.*" (Italics ours.)

The Supreme Court of the state of Ohio has definitely determined that the above-quoted article and section of the Constitution is not self-executing. *Raudabaugh* v. *State,* 96 Ohio St., 513, 118 N. E., 102, paragraphs 1 and 2 of the syllabus read as follows:

"1. A state is not subject to suit in its own courts without its express consent.

"2. The provision of the Ohio Constitution, Article I, Section 16, as amended September 3, 1912, that 'Suits may be brought against the state, in such courts and in such manner, as may be provided by law,' is not self-executing; and statutory authority is required

as a prerequisite to the bringing of suits against the state.''

In regular sequence we next inquire as to whether the state Legislature has enacted any law authorizing process against the state of Ohio.

We are referred to Section 11760, General Code, as authorizing proceedings in aid of execution as brought in the instant cause. This is the first section under ''Proceedings in Aid of Execution.''

This section reads as follows:

''When a judgment debtor has not personal or real property subject to levy on execution sufficient to satisfy the judgment, any equitable interest which he has in real estate, as mortgagor, mortgagee, or otherwise, or any interest he has in a banking, turnpike, bridge, or other joint stock company, or in a money contract, claim, or chose in action, due or to become due to him, or in a judgment or order, or money, goods, or effects which he has in the possession of any person, or *body politic* or corporate, shall be subject to the payment of the judgment, by action.'' (Italics ours.)

If the words ''body politic'' include the state of Ohio, then it necessarily follows that the necessary legislative enactment has been passed to authorize proceedings to garnishee the salary of a state employee.

Our attention has been called to the following as the definition of the words ''body politic,'' in Black's Law Dictionary (3 Ed.), page 231:

''Body politic—the collective body of a nation or state as politically organized or as exercising political functions.''

*People* v. *Snyder*, 279 Ill., 435, 440, 117 N. E., 119, 121, states in the opinion:

'' 'Body politic' is defined by lexicographers as the state or nation as an organized political body of people collectively. (New Standerd Dictionary; Webster's New International Dictionary.) ' ''The state'' means the whole people united in one body politic, and ''the

state" and "the People of the state" are equivalent expressions.' (*Brown* v. *State*, 5 Colo., 496. See, also, *Penhallow* v. *Doane*, 3 Dall., 54.)"

11 Corpus Juris Secundum, 380, reads:

"*Body politic.* A term of ancient origin, the collective body of a nation or state as politically organized, or as exercising political functions; (*People* v. *Snyder*, * * * [*supra*]; 8 Corpus Juris, 1137) the state or nation as an organized political body of people collectively; a corporation, a body to take in succession, framed as to its capacity by policy."

Reference is also made to rules of construction of Ohio statutes as made by Ohio courts. These appear in 37 Ohio Jurisprudence, under the heading of "Statutes," and the subheading of "Primary Rules of Construction." The text is formulated from Ohio decisions, reference to which is made in the notes. On page 504, Section 274, appears the following:

"In the interpretation or construction of statutes, the primary and paramount rule is to ascertain, declare, and give effect to the intention of the Legislature, as gathered from the provisions enacted, by the application of well-settled canons of interpretation, since the ultimate function of construction is to ascertain the legislative will."

And further, in 37 Ohio Jurisprudence, 508, Section 275:

"A construction adopted should not be such as to defeat the obvious intention of the Legislature or do violence thereto, wholly or partially, but rather one which would carry such intention into effect."

And in 37 Ohio Jurisprudence, 510, Section 276:

"It is to be assumed, or presumed, that the Legislature used the language contained in a statute advisedly and intelligently."

And in 37 Ohio Jurisprudence, 511, Section 277:

"The intention of the Legislature in enacting a statute must be determined primarily from the lan-

guage of the statute itself—that is, from a proper interpretation of the language used—because the language of a statute is its most natural expositor. Therefore, in interpreting a statute, the attention of the courts is always directed to the terminology employed. This rule is of such universal application that no exhaustive citation of the cases following it is attempted * * * ''

We are also referred to the rule concerning titles of statutes.

The titles of chapters and other subdivisions in codes have been declared to be parts of the statutes classified thereunder. *Harris* v. *State,* 57 Ohio St., 92, 48 N. E., 284.

So far as we are able to find, the General Assembly of our state has enacted no legislation authorizing actions against the state, except Section 11760, General Code, heretofore quoted in full, and the only parts of this section claiming to authorize the issuing of process against the state are the words ''body politic.''

This brings us directly to the question as to whether the words ''body politic,'' as used in the above section, include the state.

In searching for precedents we must start with the understanding that only proceedings in aid of execution, where garnishee process is issued against a ''body politic,'' can be of any assistance. This is true for the reason heretofore stated that no legislation has been enacted to authorize process against the state, unless it be the garnishee process authorized under Section 11760, General Code.

The attorney general, in his brief, cites and comments on numerous Ohio cases wherein the pronouncement is made that suits may not be prosecuted against the state without its consent. We have no difficulty in following the pronouncements in these several cases, but they are not at all helpful in the instant case, because not dealing with garnishee process under Sec-

tion 11760, General Code. Most of the cases cited deal with tort actions against the state, but we have no such situation in the instant case.

Reference is also made to text of publications such as Corpus Juris, A. L. R., and also to decisions in other states, but these are not helpful, unless it appears that the text writers or courts in other jurisdictions were dealing with code sections similar to ours. No such claim is made.

The attorney general, in his brief, refers to two Franklin county Common Pleas Court decisions claiming to deny the right of garnishment against state officials.

Counsel for appellant, in their brief, argue that in both cases the decision turned on other propositions and did not involve the question under consideration in the instant case. These cases are not found in any publication, and further, neither counsel have seen fit to provide us with copies.

We are also referred to 1888-1900, Opinions of Attorney General, Vol. IV, 383 to 466, 1906 Opinions of Attorney General, 197, and 1927 Opinions of Attorney General, Vol. I, 356. The above referred to Opinions of the Attorney General support the claim of the state. Other than these Attorney General's Opinions, the decision of the Municipal Court in the instant case, and a like decision in a companion case this day determined, we find nothing supporting the state's claim.

The Supreme Court of Ohio, in the case of *City of Newark* v. *Funk & Bro.*, 15 Ohio St., 462, made the following pronouncement in its syllabus:

"Salaries of officers of incorporated cities, due and unpaid, may be subjected by judgment creditors of such officers to the payment of their judgments, under the provisions of Section 458 of the Code of Civil Procedure."

Section 458 of the Code of Civil Procedure (51 Ohio Laws, 135), is similar to Section 11760, General Code,

in that it provides for garnishment against a "body politic." In the opinion Judge Welch makes the following pertinent observation:

"We see nothing in the requirements of public good, and surely there is nothing in the justice of the case, requiring us to depart from the plain reading of the statute."

Of course, this case was dealing with a municipality rather than a state, and this differentiation is claimed to be important.

The Supreme Court of Ohio had under consideration Section 11760, General Code, in the case of *Uricich* v. *Kolesar*, 132 Ohio St., 115, 5 N. E. (2d), 335. Paragraphs 1 and 2 of the syllabus read as follows:

"1. The term 'any * * * body politic,' as employed in Section 11760, General Code, relating to garnishment, includes counties.

"2. This provision of the statute is not contrary to public policy. (*City of Newark* v. *L. S. Funk & Bro.*, 15 Ohio St., 462, approved and followed.)"

This case was dealing with a county instead of the state.

The opinion was by Chief Justice Weygandt, and on page 118 appears the following:

"What is a 'body politic'? There is nothing in this statute to indicate that the words are employed in other than their common acceptation. 'Politic' is a derivative from a root signifying 'citizen.' It would seem therefore, that the phrase connotes simply a group or body of citizens organized for the purpose of exercising governmental functions. Such a group may be large or small, and it may be a group within a group. What basis then is there for excluding counties from the purview of the phrase even if it be conceded that in many respects they are but agencies of the state?"

We think the above-quoted portion of the opinion presents the irresistible conclusion that a state is a

"body politic" and the court was presenting the argument that an integral part of the state, such as a county, would also be a "body politic."

A case directly in point is found in 24 Ohio Law Abs., 210, entitled *H. & A. Selmer, Inc.*, v. *Industrial Commission*. The second paragraph of the syllabus reads as follows:

"2. The state of Ohio is a body politic and corporate, and the state or any of its elected officers or appointed boards or agencies may be sued by virtue of Section 11760, General Code, for the purpose stated therein."

The opinion bears evidence of careful study and research. It is pointed out that this was a decision by a municipal judge in the city of Cleveland, and therefore is not binding on this court. Under the rule of *stare decisis* this would be true. However, we have no pride of position which prevents us from considering any well prepared opinion, regardless of the *stare decisis* rule.

In the case of *Cooper* v. *Schooley,* 26 Ohio App., 313, 159 N. E., 727, Judge Vickery, in considering the question of garnisheeing the fees of a city employee, commented on the case of *Newark* v. *L. S. Funk & Bro.,* *supra,* as follows:

"It would hardly seem possible that such ruling would be necessary from a court. One would think that it was in accordance with public policy to see that public officers did pay their debts, but, however that may be, the court in that case, under the same statutes that are on the statute books today, decided that to attach the earned salary of a public officer was not contrary to public policy, and sustained the attachment.

"Now, remember that that was perhaps back in 1864, that the same statute has been on the books ever since, and that this authority has never been questioned in Ohio and is undoubtedly the law today, and by reason it ought to be the law."

Of course, this question was dealing with a municipality.

In the case of *Gill* v. *Reese,* 53 Ohio App., 134, 4 N. E. (2d), 273, the court held that the Home Owners' Loan Corporation was subject to the service of garnishment process in answer to the contention that such was against public policy. On page 139 of the opinion, Judge McCurdy, speaking for the court, made the following observation:

"An honest debt is in the last analysis always the basis of a garnishment proceeding, for which reason it would seem that this instrumentality of government would not be interfered with, but would be recognized as furthering its general purpose in answering such process with a view to seeing that its funds are placed in the hands of persons to whom they are due. This, to our mind, is sound public policy."

Reference is also made to the 1932 Opinions of Attorney General, Vol. II, 928, No. 4545.

It is our determination that the state of Ohio is a body politic, and that by the plain provisions of Section 11760, General Code, garnishee process may issue against the state officers, and further that such proceeding is not contrary to public policy.

We have no difficulty in arriving at the conclusion that it should be against public policy for the state of Ohio to have its state officers lend their aid to a judgment debtor who does not want to pay his honest debts.

The judgment of the trial court will be reversed and cause remanded, with instructions to continue hearing for garnishment process and for further proceedings according to law.

*Judgment reversed and cause remanded.*

HORNBECK, P. J., and GEIGER, J., concur.