THE PEOPLE *ex rel.* SAMUEL K. SKINNER, Chairman of the Capital Development Board, Plaintiff-Appellant, v. HELLMUTH, OBATA & KASSABAUM, INC., *et al.*, Defendants-Appellees.

Second District   No. 84—0525

Opinion filed August 13, 1985.

Neil F. Hartigan, Attorney General, of Springfield (Arthur D. Nordenberg, Special Assistant Attorney General, of counsel), for appellant.

David B. Van Etten, D. Kendall Griffith, and Joshua G. Vincent, all of Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago, for appellee Hellmuth, Obata & Kassabaum, Inc.

Stanley E. Niew, of Niew & O'Malley, of Oak Brook, for appellees Miller-Davis Company and United States Fidelity & Guaranty Company.

Paul T. Lively, of O'Halloran, Lively & Walker, of Northbrook, for appellee Thorleif Larsen & Son, Inc.

PRESIDING JUSTICE NASH delivered the opinion of the court:

Plaintiff, the Capital Development Board (CDB), appeals from an order of the circuit court which dismissed its complaint against defendants, Hellmuth, Obata & Kassabaum, Inc. (HOK); Miller-Davis Company (Miller); Thorleif Larsen & Son, Inc. (Larsen), and United States Fidelity and Guaranty Company (USF&G). Defendants' motions to dismiss were brought pursuant to section 2—619(a)(5) of the Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, par. 2—619(a)(5)) in which it was alleged, *inter alia*, that plaintiff's action was not brought within the time limited by law as prescribed in section 13—214(a) of the Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, par. 13—214(a)). The trial court determined that plaintiff, an agency of the State of Illinois, was subject to the statute and had not commenced this action within the two-year period there required. Plaintiff appeals.

The pleadings disclose that in November 1968, the board of trustees of Community College District No. 533 in Lake County entered into a contract with defendant HOK for architectural and engineering services for the design and construction of a building for the College of Lake County; the contract was thereafter assigned to CDB in March 1973. In May 1972, the Illinois Building Authority contracted with defendant, Miller, for construction of that building at a cost of $4,105,305, and that contract was assigned to CDB as the developer in September 1972. To secure its performance of the contract, defendant Miller obtained a performance bond from USF&G in the amount of the contract which named plaintiff, CDB, as the secured party. Miller also entered into a subcontract with Larson for construction of the building's masonry walls. Construction commenced and in July 1974, CDB issued certificates of substantial completion for the building.

The record also indicates that commencing in July or August 1975, and until March 1977, there were complaints about the construction,

principally relating to water leaks in the masonry walls, and correspondence discussing the matter passed between the college district, CDB, Miller and HOK seeking resolution of the problems. After an on-site inspection in early 1976, HOK advised the college and Miller that there existed numerous deviations from the construction contract requirements and specifications, including use of improper materials and improper construction, which caused deterioration and leaking of the walls and windows of the building. In September 1981, CDB employed architects to investigate the moisture problem in the building masonry walls, and they reported design errors and construction defects by defendants. The problems then noted were essentially the same as those discussed in the 1975-77 correspondence between the parties.

This action for recovery of damages was commenced by CDB on June 7, 1983, against defendants who sought and were granted dismissal on the grounds it was barred by the two-year time limitation contained in section 13—214(a) of the Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, par. 13—214(a)). The trial court found that plaintiff knew of acts or omissions by defendants causing damages by March 1977, yet did not commence this action until June 1983; it also rejected plaintiff's argument the statute was unconstitutional as special legislation, the court relying upon the authority of *Matayka v. Melia* (1983), 119 Ill. App. 3d 221, 456 N.E.2d 353, which has so held.

Plaintiff, CDB, contends first that as an agency of the State of Illinois it is not subject to the provisions of section 13—214(a), as the statute does not expressly include the State within its terms and the common law maxim, *nullum tempus occurrit reipublicae*, protects the State and its agencies from running of a statute of limitations.

Section 13—214(a) of the Code of Civil Procedure provides:

"Sec. 13—214. Construction—Design management and supervision. As used in this Section 'person' means any individual, any business or legal entity, or any body politic.

(a) Actions based upon tort, contract or otherwise against any person for an act or omission of such person in the design, planning, supervision, observation or management of construction, or construction of an improvement to real property shall be commenced within 2 years from the time the person bringing an action, or his or her privity, knew or should reasonably have known of such act or omission." Ill. Rev. Stat. 1983, ch. 110, par. 13—214(a).

■ It is established that the State and its agencies, when in pursuit of public rights, are not barred by a statute of limitations unless specifically included within the terms of the statute. There is a policy to

preserve public rights, revenues and property from loss due to the negligence of public officers. (*Winakor v. Annunzio* (1951), 409 Ill. 236, 249, 99 N.E.2d 191; *Clare v. Bell* (1941), 378 Ill. 128, 37 N.E.2d 812; *People ex rel. Nudelman v. Superior Petroleum Co.* (1939), 372 Ill. 546, 25 N.E.2d 30.) Plaintiff argues that if the legislature had intended this statute to apply to the State it would have expressly made reference to the State of Illinois, as it has done in other sections of the Code of Civil Procedure (see Ill. Rev. Stat. 1983, ch. 110, pars. 2—611 and 13—121), and did not do so here.

Words used in a statute are the best source of legislative intent and, absent some contrary indication, they will be given their plain and ordinary meaning. (*People v. Zakarian* (1984), 121 Ill. App. 3d 968, 975, 460 N.E.2d 422.) Section 13—214 states, *inter alia,* that it is applicable to "any body politic." In *People v. Snyder* (1917), 279 Ill. 435, 440-41, 117 N.E. 119, the court determined that the term "body politic" denotes a politically organized, collective body of a nation or state and that the State of Illinois was such a body. See *Union County Regional Board of School Trustees v. Union County Historical Society, Inc.* (1977), 52 Ill. App. 3d 458, 461, 367 N.E.2d 541.

We conclude the legislature intended by its terms to include the State of Illinois and its agency, CDB, within the scope of section 13—214(a).

■■ ■ Plaintiff next contends the statute in question violates the prohibition against special legislation found in article IV, section 13, of the Illinois Constitution of 1970 because it contains an unreasonable classification of members of the construction industry. Plaintiff argues that *Skinner v. Anderson* (1967), 38 Ill. 2d 455, 231 N.E.2d 588, is dispositive of this issue as it held an essentially similar statute invalid as special legislation on these same grounds.

Defendants seek to distinguish the present statute from that considered by the court in *Skinner v. Anderson,* noting section 13—214(a) has no limiting provision excluding owners, tenants or persons in possession, as did its predecessor, and that the present statute has a broader scope as it applies to "any person." Defendants further note section 13—214(a) has been held to meet constitutional standards by the First District of this court in *Matayka v. Melia* (1983), 119 Ill. App. 3d 221, 456 N.E.2d 353.

A statute is presumed valid and the burden of establishing unconstitutionality rests upon the challenger. (*Sayles v. Thompson* (1983), 99 Ill. 2d 122, 124-25, 457 N.E.2d 440; *Scott v. Department of Commerce & Community Affairs* (1981), 84 Ill. 2d 42, 50, 416 N.E.2d 1082.) Special legislation is that which arbitrarily confers a benefit or exclusive

privilege on a person or group to the exclusion of others similarly situated; special legislation differs from a violation of the right to equal protection in that the former discriminates in favor of a select group whereas the latter consists of arbitrary and invidious discrimination against a person or class of persons. (*Illinois Polygraph Society v. Pellicano* (1980), 83 Ill. 2d 130, 137-38, 414 N.E.2d 458.) Under either type of inquiry, the court is required to determine whether the legislative classification is unreasonable in that it preferentially and arbitrarily includes a class (special legislation), or denies a benefit to a class (equal protection). (*Illinois Polygraph Society v. Pellicano* (1980), 83 Ill. 2d 130, 138, 414 N.E.2d 458.) Our supreme court has applied constitutionality tests interchangeably as to either question. *Anderson v. Wagner* (1979), 79 Ill. 2d 295, 402 N.E.2d 560; see *Brown v. Mason* (1985), 132 Ill. App. 3d 439, 477 N.E.2d 61; *Mier v. Staley* (1975), 28 Ill. App. 3d 373, 329 N.E.2d 1.

If there is a reasonable basis for differentiating between the class to which the law is applicable and that to which it is not, the legislature may constitutionally classify persons and objects for the purposes of regulation and control. (*People ex rel. Fahner v. Hedrich* (1982), 108 Ill. App. 3d 83, 93, 438 N.E.2d 924; *Anderson v. Wagner* (1979), 79 Ill. 2d 295, 315, 402 N.E.2d 560.) Classification must be based upon a substantial difference in circumstances properly related to the classification which may be upheld if any state of facts can reasonably be conceived that would sustain it. (*Hoffmann v. Clark* (1977), 69 Ill. 2d 402, 425, 372 N.E.2d 74; *Kobylanski v. Chicago Board of Education* (1976), 63 Ill. 2d 165, 175, 347 N.E.2d 705.) Where there is a valid difference of opinion as to reasonableness of a classification, the legislative judgment must prevail (*Cornell v. Du Page County* (1977), 58 Ill. App. 3d 230, 235, 374 N.E.2d 1), and whether all persons similarly situated have been treated alike is a question for judicial determination. *F.S. Royster Guano Co. v. Virginia* (1920), 253 U.S. 412, 415, 64 L. Ed. 989, 990-91, 40 S. Ct. 560, 561-62; *Anderson v. Wagner* (1979), 79 Ill. 2d 295, 314-15, 402 N.E.2d 560.

The predecessor statute to 13—214(a), addressed in *Skinner v. Anderson,* was former section 29 of the Limitations Act, which provided:

> "No action to recover damages for any injury to property, real or personal, or for bodily injury to the person, or for bodily injury or wrongful death, arising out of the defective and unsafe condition of an improvement to real estate, nor any action for contribution or indemnity for damages sustained on account of such injury, shall be brought against any person performing or

furnishing the design, planning, supervision of construction or construction of such improvement to real property, unless such cause of action shall have accrued within four years after the performance or furnishing of such services and construction. This limitation shall not be available to any owner, tenant or person in actual possession and control of the improvement at the time such cause of action accrues." Ill. Rev. Stat. 1965, ch. 83, par. 24(f).

The supreme court found the former statute to violate section 22 of article IV of the 1870 Illinois Constitution as special legislation, concluding:

"The effect of section 29 of the Limitations Act is to grant to architects and contractors a special or exclusive immunity.
\* \* \*

If, as the defendant suggests, the objective of the statute is to require that trials of actions based upon defects in construction be held within a relatively short time after the work is completed, that objective is achieved only partially, and in a discriminatory fashion.
\* \* \*

More important is the fact that of all those whose negligence in connection with the construction of an improvement to real estate might result in damage to property or injury to person more than four years after construction is completed, the statute singles out the architect and the contractor, and grants them immunity. It is not at all inconceivable that the owner or person in control of such an improvement might be held liable for damage or injury that results from a defective condition for which the architect or contractor is in fact responsible. Not only is the owner or person in control given no immunity; the statute takes away his action for indemnity against the architect or contractor.

The arbitrary quality of the statute clearly appears when we consider that architects and contractors are not the only persons whose negligence in the construction of a building or other improvement may cause damage to property or injury to persons. If, for example, four years after a building is completed a cornice should fall because the adhesive used was defective, the manufacturer of the adhesive is granted no immunity. And so it is with all others who furnish materials used in constructing the improvement. But if the cornice fell because of defective design or construction for which an architect or contractor was respon-

sible, immunity is granted. It can not be said that the one event is more likely than the other to occur within four years after construction is completed.

Of course, section 22 of article IV does not prohibit legislative classification. It does, however, require that the classification be reasonably related to the legislative purpose. And where that relationship was nonexistent the statute has been held to contravene the constitutional provision. [Citations.]" *Skinner v. Anderson* (1967), 38 Ill. 2d 455, 459-60, 231 N.E.2d 588, 590-91.

We must therefore determine whether in its present form the statute meets the deficiencies noted in *Skinner v. Anderson* and, as also argued by defendants, whether the later opinion of the court in *Anderson v. Wagner* (1979), 79 Ill. 2d 295, 402 N.E.2d 560, has, in effect, overruled *Skinner v. Anderson.*

A comparative examination of the present and former versions of these limitation statutes disclose few substantive differences between them. The former statute singled out the architect and contractor from those categories of persons whose negligence in the construction of an improvement to real property may cause injury or damage to others; it gave no similar immunity to suit brought after four years to the owner or person in control or to those who may furnish materials used in constructing the improvement. In the present statute the only additions to the classes of persons who will be immune from suit (now after two years) are those who engaged in the "observation or management of construction." Again, the material provider whose product was defective causing injury or damages has no immunity, as in the former statute. The owner, who might be held liable for defective conditions for which the architect or contractor was in fact responsible, is given no immunity, unless the owner also happened to fall within one of the special categories benefiting from the limitation. *C.S. Johnson Co. v. Champaign National Bank* (1984), 126 Ill. App. 3d 508, 511, 467 N.E.2d 363.

It is difficult to identify those persons intended by the legislature to be within the added "observation or management of construction" categories in the present statute. The phrase appears to be redundant as it is apparent those persons who engage in the "design, planning, supervision, *** or construction," of an improvement also will normally be within these added categories. Persons outside of the design, planning, supervision and construction categories whose acts or omissions may relate to observation or management of the construction are not readily apparent.

■ Defendants argue the present statute does not specifically ex-

clude from its benefits owners, tenants or persons in possession and control of the premises, as did the invalid prior statute, and that it also applies to "any person." It is clear, however, that the immunities granted by the present statute are limited to those persons who have engaged in the design, planning, supervision, observation or management of construction or construction of the improvement and all other persons, owners, tenants, persons in possession or control and suppliers of material are still excluded from the benefits of the statute although they may also be exposed to liability by reason of construction defects.

We conclude that section 13—214(a) of the Civil Practice Act suffers from the same constitutional deficiency addressed by the court in *Skinner v. Anderson* when considering its predecessor and must, on the same grounds, be invalidated as special legislation.

We are mindful that the First District of this court in *Matayka v. Melia* (1983), 119 Ill. App. 3d 221, 456 N.E.2d 353, has taken a different view of section 13—214(a). It rejected the argument that *Skinner v. Anderson* controlled the issue and relied upon *Anderson v. Wagner* (1979), 79 Ill. 2d 295, 402 N.E.2d 560, finding there was a "link between the statute and permissible legislative purpose" thus meeting constitutional standards. The court in *Matayka* did not specify what was the reasonable basis for differentiating between those exposed to liability to whom immunity was granted and those who were excluded by the legislation.

Our reading of *Anderson v. Wagner* causes us to reach a different conclusion than did the *Matayka* court. The supreme court there found a sound and rational basis existed to support legislation which set a foreshortened statute of limitations applicable to only physicians and hospitals which did not apply to other groups of health care providers. (*Anderson v. Wagner* (1979), 79 Ill. 2d 295, 320.) The court considered *Skinner v. Anderson*, finding it to be not controlling under the facts before it, but did not suggest that case was no longer viable under its facts.

In view of the disposition of the issues discussed we need not consider other arguments offered by the parties.

Accordingly, the judgment of the circuit court is reversed and the cause remanded for further proceedings.

Reversed and remanded.

LINDBERG and SCHNAKE, JJ., concur.