(No. 31600.

ARTHUR H. WINAKOR, Successor Trustee of Altman's Stores, *et al.,* Appellees, *vs.* FRANK ANNUNZIO, Director of Labor, *et al.,* Appellants.

*Opinion filed May 24, 1951.*

IVAN A. ELLIOTT, Attorney General, of Springfield, (WILLIAM C. WINES, RAYMOND S. SARNOW, JAMES C. MURRAY, and A. ZOLA GROVES, all of Chicago, of counsel,) for appellants.

JOHN ALAN APPLEMAN, of Urbana, and SORLING, CATRON & HARDIN, of Springfield, (ROBERT D. PATTON, of counsel,) for appellees.

Mr. JUSTICE SCHAEFER delivered the opinion of the court:

This is an appeal from a judgment of the circuit court of Sangamon County entered in two consolidated causes brought under the Administrative Review Act wherein the

circuit court reversed separate decisions of the Director of Labor in which the Director had held that two employers, Altman's, Inc., a corporation, and Arthur H. Winakor, successor trustee under the will of William Altman, deceased, were not entitled to the unemployment compensation experience rating of their common predecessor, Altman's, Incorporated, a dissolved corporation. The appeal is prosecuted by the Director of Labor.

No controversy exists as to the facts. In 1947, and for a number of years prior thereto, Altman's, Incorporated, owned and operated five stores consisting of four retail women's apparel stores located, respectively, at Springfield, Murphysboro, Jacksonville, and Bloomington, Illinois, and the millinery department of a store at La Salle, Illinois. These stores were operated separately, each having a local manager and keeping separate payroll records, profit and loss records and other necessary books and records.

William Altman, the founder, president, and owner of approximately ninety-nine per cent of the capital stock of Altman's, Incorporated, died January 6, 1947. By his will, he left the bulk of his estate, including his interest in Altman's, Incorporated, in trust for the benefit of his wife, brother and sisters, designated his wife as trustee and Winakor as successor trustee, and directed his trustee to continue the operation of Altman's, Incorporated. The will was duly admitted to probate and Ruth F. Altman, the testator's widow, controlled the corporation, first as executrix and then as trustee, until September 18, 1947, when she resigned as trustee, renounced the will and elected to take her statutory one-half interest in the estate. Thereafter, Winakor qualified as trustee and operated Altman's, Incorporated, until December 31, 1947, when, pursuant to an agreement and an order of court, the corporation was dissolved and its assets distributed in kind. Winakor, as trustee, received the Murphysboro, Jacksonville, and Bloomington stores, while Ruth Altman took the more valuable

store at Springfield and also the millinery department in the store at La Salle, and immediately transferred these assets to Altman's, Inc., a new corporation which she had caused to be organized for this purpose. The portion of the assets to which Altman's, Inc., succeeded accounted for approximately 62 per cent of the employees, 68 per cent of the wages paid subject to unemployment contributions and 63 per cent of the gross income of the dissolved corporation. In short, Ruth Altman, and through her Altman's, Inc., acquired about 65 per cent of the assets of the former business, and Winakor, trustee, about 35 per cent. The difference in valuation was adjusted by Ruth Altman making a cash payment to the trustee. Altman's, Inc., has since continued to own and operate the millinery department and the Springfield store, the three other stores being owned and controlled by Winakor, as trustee. The change in ownership and division of assets did not result in any change in the method of operating the several stores and each continued to keep its own separate and distinct payroll, profit and loss and other records.

Altman's, Incorporated, prior to its dissolution on December 31, 1947, had incurred liability for the payment of unemployment compensation contributions annually for five years and, by reason of its employment experience, had a contribution rate of 0.5 per cent for the year 1947. Had it continued in existence, it would have had a rate of one per cent for 1948. May 28, 1948, the Director of Labor assigned to Winakor, trustee, the standard contribution rate of 2.7 per cent applicable to all employers who have not incurred liability for the payment of contributions for a period of five successive years. July 29, 1948, Altman's, Inc., was assigned a contribution rate of one per cent for 1948. Subsequently, on October 19, 1948, this order was revoked and the standard rate of 2.7 per cent applied, retroactive to January 1, 1948. Both employers protested their rate determinations and exhausted their administra-

tive remedies with the results as narrated. On review by the circuit court, however, the final decisions of the Director of Labor were reversed and the causes remanded, with directions that the contribution rates be established at one per cent for 1948, and that the benefit wage experience of Altman's, Incorporated, be assigned to both employers in computing their contribution rates in the years subsequent to 1948. This appeal followed.

To obtain a reversal of the judgment of the circuit court, the Director relies upon the provisions of section 18(c)(6) of the Unemployment Compensation Act. (Ill. Rev. Stat. 1947, chap. 48, par. 234.) As a preliminary matter, it should be observed that section 18 of the act is the only section dealing with the payment of contributions and contribution rates. Prior to 1943, all employers subject to the act were required to pay contributions to the unemployment trust fund amounting to 2.7 per cent of their payrolls, as adjusted. (Ill. Rev. Stat. 1941, chap. 48, par. 234.) Although the standard rate of 2.7 per cent was retained, commencing in 1943, employers who had incurred liability for the payment of contributions for each of the five preceding calendar years became entitled to variable rates ranging from 0.5 to 3.6 per cent, individual rates being based primarily upon the unemployment experience of the particular employer and, in part, upon the total benefits paid from the unemployment trust fund.

Until the addition of section 18(c)(6) in 1941, (Laws of 1941, pp. 660, 683,) the Unemployment Compensation Act made no provision for the transfer of an employer's experience rating record to his successor under any circumstances. Section 18(c)(6), as amended in 1945 and in force in 1948, (Ill. Rev. Stat. 1947, chap. 48, par. 234(c)(6),) contains two provisions for the transfer of experience ratings, the first being limited to mergers, consolidations, and reorganizations occurring prior to July 1, 1945, and, hence, not applicable here. The pertinent part

of the second provision is as follows: "whenever on or after July 1, 1945, any employing unit succeeds to substantially all of the employing enterprises of another employing unit, then, all years during which liability for the payment of contributions was incurred by the predecessor preceding the succession * * * shall become years during which liability was incurred by the successor and not by the predecessor, * * *." Relying upon this, the Director contends that neither Altman's, Inc., nor Winakor, trustee, is entitled to a variable contribution rate based upon the unemployment experience of Altman's, Incorporated, because neither succeeded to substantially all of the employing enterprises of Altman's, Incorporated.

Seeking to avoid the requirements of section 18(c)(6), Altman's, Inc., and Winakor, hereafter referred to as appellees, jointly contend that, prior to the dissolution of Altman's Incorporated, each store was an employing unit, individually as well as collectively, under subsection 2(d) of the Unemployment Compensation Act; that each store was likewise an employer under subsection 2(e); that, regardless of the changes in legal ownership, no store ever ceased to be an employer under the act, and that, therefore, each store is entitled to the benefit of its own employment experience and a variable contribution rate based upon its individual experience. The employers thus resort to the definition section of the act and contend, in short, that section 18(c)(6) does not apply to the changes in legal form of a predecessor business, where the former business consisted of separate and distinct enterprises which could qualify individually both as employing units and employers.

The Unemployment Compensation Act imposes liability for contributions on employers and defines in terms of employing units. Section 2(d), (Ill. Rev. Stat. 1947, chap. 48, par. 218(d),) provides: " 'Employing unit' means any individual or type of organization, including any partnership, association, trust, estate, joint-stock company, insur-

ance company, or corporation, whether domestic or foreign, or the receiver, trustee in bankruptcy, trustee or successor thereof, or the legal representative of a deceased person, which has or subsequent to January 1, 1936, had in its employ one or more individuals performing services for it within this State. All individuals performing services within this State for any employing unit which maintains two or more separate establishments within this State shall be deemed to be employed by a single employing unit for all purposes of this Act." While the foregoing definition specifically includes a corporation, broad as it is, it neither expressly nor impliedly includes a store or any other severable part of a corporation as an employing unit. Furthermore, the last sentence of the definition not only reveals that the possibility of one business having two or more separate establishments was considered, but expressly negatives appellees' assertion that separate establishments of a particular business may be regarded as individual employing units. In addition, section 18(c)(6), insofar as it provides that "whenever * * * any employing unit succeeds to substantially all of the employing enterprises of another employing unit * * *," also demonstrates that a separate establishment or employing enterprise is not an employing unit. The conclusion is inescapable that Altman's, Incorporated, was a single employing unit and that each store was not an employing unit but merely a separate establishment or employing enterprise of an employing unit.

Similarly, the theory that each store owned and operated by Altman's, Incorporated, was an employer is not substantiated by any of the five definitions of an employer found in section 2(e). (Ill. Rev. Stat. 1947, chap. 48, par. 218(e).) Under section 2(e)(1)(B), an "employer" is "any employing unit which has or had in employment six or more individuals within each of twenty or more calendar weeks, * * * whether or not such weeks are or were consecutive, within either the current or preceding

calendar year; * * *." This is the basic definition of an employer.

The remaining definitions are supplementary. For example, section 2(e)(2) provides that "employer" means "any individual or employing unit which succeeded to the organization, trade, or business of any distinct severable portion of another employing unit, which portion, if treated as a separate employing unit, would have been, at the time of the succession, an employer under paragraph (1) of this subsection." Section 2(e)(3) is to much the same effect, defining "employer" as "Any individual or employing unit which succeeded to any of the assets of an employer or to any of the assets of a distinct severable portion thereof, if such portion, when treated as a separate employing unit would be an employer under paragraph (1) of this subsection," subject to certain provisions not pertinent here. Section 2(e)(4) treats a different aspect of the same problem. It provides that "employer" means "Any individual or employing unit which succeeded to the organization, trade, or business, or to any of the assets of a predecessor unit * * *," if the combined experience of the successor and predecessor unit equals the experience necessary to constitute an employing unit an employer under section 2(e)(1), adding that, for the purposes of this paragraph, "the term 'predecessor unit' shall include any distinct severable portion of an employing unit." Section 2(e)(5) provides that affiliated employing units, which when taken together or treated as a single employing unit would be an employer under section 2(e)(1), shall be deemed an employer.

Section 2(e)(6) provides "employer" means "Any employing unit which, having become an employer under paragraphs (1), (2), (3), (4), or (5), has not, under Section 3, ceased to be an employer subject to this Act."

It is appellees' contention that sections 2(e)(1) through 2(e)(5) demonstrate that the individual stores owned and

operated by Altman's, Incorporated, were separate employers and that, by virtue of section 2(e)(6), they did not cease to be employers upon the dissolution of the corporation, but continued to be separate employers and were entitled to their own individual experience ratings. All these paragraphs define employer as "any employing unit" or "any individual or employing unit" meeting the tests described. Since the separate stores were not, and are not, either individuals or employing units, it follows that they cannot be regarded as separate employers. To the extent that the successor clauses, sections 2(e)(2), 2(e)(3), and 2(e)(4), provide that a distinct severable portion of a predecessor employing unit may be treated as a separate employing unit for the purpose of determining when a successor employing unit is an employer, they constitute an additional manifestation of legislative intention that ordinarily a separate establishment of a business is not an employing unit. Furthermore, although appellees urge that the stores were employers prior to the dissolution of their common predecessor, it is evident that the successor clauses, so heavily relied upon in this connection, merely prescribe when the successor, not the predecessor, is an employer. Moreover, section 2(e)(6), relied upon to show that the stores, as alleged employers, did not cease to be employers upon their transfer to their present owners, has nothing to do with the transfer of assets. Appellees labor under the misapprehension that the section 3 referred to in section 2(e)(6) is paragraph (3) of subsection (e) of section 2, one of the successor clauses. Section 3 of the act provides, in substance, that an employer, who no longer meets the requirements of section 2(e)(1)(B) as to the minimum number of employees, is entitled to have his status as an employer terminated. Consequently, paragraph (e)(6) of section 2 merely means that an employer is an employing unit which has become an employer under paragraphs

(e)(1) through (e)(5) of section 2 and has not, under section 3, ceased to be an employer by a subsequent reduction in the number of employees below the statutory minimum.

Appellees also rely strongly upon the decision in *Karlson* v. *Murphy*, 387 Ill. 436, in support of their contention that they are entitled to the experience rating of their common predecessor because of the continuity of the operation of the stores as separate business enterprise. The *Karlson case* involved the question of whether six successive partnerships of the same name, owning the same business, operating under a single partnership agreement, and having the same but an ever-decreasing number of partners constituted a single employer within the meaning of section 2(g)(1) providing that wages on which contributions are payable shall not include remuneration in excess of $3000 paid by an employer to an individual in one calendar year. As originally organized, the firm consisted of fourteen members. The articles of partnership provided that the partnership should not terminate upon the death or withdrawal of a partner but should be continued by the remaining partners. During the two calendar years involved, there were deaths or withdrawals on five separate occasions and, in each case, the remaining partners continued in business. Liability for contributions was sought to be imposed upon the basis that each reduction in membership and continuation in business resulted in a new partnership so that, in each year in question each allegedly new partnership was liable for contributions on the wages of employees up to $3000, regardless of the amounts paid to the same employees by a predecessor in the same year. It was there held that, since the statute defines the terms "employing unit" and "employer" in a business or economic sense rather than in a technical legal sense, the partnership continued as a single employing unit and single employer, so as to be liable for contribu-

tion only on wages up to $3000 in each year, even though, under the Uniform Partnership Act, a dissolution might occur upon the event of each death or retirement.

This decision does not aid the present employers. Manifestly, a holding that six successive partnerships owning a single business constitute a single employer for the purpose of paying contributions is not authority for the proposition that five separate businesses owned by a corporation and, subsequently transferred to and divided between another corporation and an individual, having no connection with each other, constitute a single employer for the purpose of determining the experience rating of the two successor employing units. Likewise, the decision in the *Karlson case* does not lend any support to appellees' assertion that each store constituted a separate employing unit and employer, the experience rating of which remained unaffected by its transfer from the dissolved predecessor corporation to either one or the other of them. Furthermore, while we adhere to the conclusion that the statute defines employing unit in a business rather than a technical legal sense, even this part of the *Karlson case* does not aid appellees, because not only do the broad provisions of subsection (d) of section 2 fail to include a distinct severable portion of a business within the definition of an employing unit but the same subsection explicitly recognizes that a single employing unit may maintain two or more separate establishments. There is nothing in subsections (d) and (e) of section 2, or in the decision in *Karlson v. Murphy*, 387 Ill. 436, to substantiate the joint contention of appellees that each store constituted a separate employing unit and separate employer, remained unaffected by the dissolution of the old corporation, and is entitled to its own experience rating. The transfer of experience ratings is governed solely by the provisions of section 18(c)(6).

In the alternative, Altman's, Inc., contends that, even if Altman's, Incorporated, be considered a single employ-

ing unit, it is still entitled to the experience rating of the dissolved corporation because it succeeded "to substantially all of the employing enterprises of another employing unit," as required by section 18(c)(6). Altman's, Inc., succeeded to two of the five stores or approximately 65 per cent of the assets of Altman's, Incorporated. Regardless of whether the employing enterprises of Altman's, Incorporated, be viewed in terms of stores or assets, it is clear that Altman's, Inc., did not acquire substantially all of the predecessor business. In *Auclair Transportation Inc.* v. *Riley,* 69 Atl. 2d (N.H.) 861, it was held that a successor acquiring $34,096, or approximately 89 per cent, of the assets of a predecessor whose total business assets aggregated $38,331 did not succeed to the experience rating of the predecessor under a statute providing that the experience rating of an employer may be transferred to "an employing unit which acquires the organization, trade, or business, or substantially all of the assets thereof." As stated by the Supreme Court of New Hampshire: "The word 'substantially' is necessarily an elastic term which does not indicate a definite, fixed amount of percentage. At one extreme it may be said that the transfer does not have to be 100%. At the other extreme, it may be said that the transfer cannot be less than 90% in the ordinary situation * * *." The situation disclosed in the case at bar is not so unusual or peculiar as to warrant the conclusion that Altman's, Inc., in acquiring 65 per cent of the assets of Altman's, Incorporated, succeeded to substantially all the assets of another employing unit.

Altman's, Inc., asserts, however, that it was the practice of the Department of Labor to interpret the phrase "substantially all the assets" appearing in the definition of an employer in subsections (e)(2) and (e)(3) of section 2 prior to 1939, (Ill. Rev. Stat. 1937, chap. 48, par. 218,) as meaning a majority of the assets and, further, that, in *Lindley* v. *Murphy,* 387 Ill. 506, this court so con-

strued the language "substantially the same interests" appearing in section 18(c)(6), as originally enacted in 1941. (Ill. Rev. Stat. 1941, chap. 48, par. 234.) No rules, orders or decisions of the Department of Labor are cited in support of the construction contended for and the Director of Labor claims there are none. Furthermore, even if subsections (e)(2) and (e)(3) of section 2 had been so interpreted, it is fundamental that an erroneous construction of a statute by an administrative agency is not binding upon the courts. *Lindley v. Murphy,* 387 Ill. 506, also relied upon by Altman's, Inc., involved three successive partnerships, each having the same name and three common partners who owned 80, 100 and 87½ per cent of three respective partnerships. The decisive issue presented was whether the three partnerships were owned by substantially the same interests and this court held that they were. The question of whether the acquisition of a bare majority of the assets of a predecessor constituted ownership and control of substantially the same interests as the predecessor was neither raised nor considered.

Seeking to obtain the benefit of a variable contribution rate of one per cent for the year 1948 at least, Altman's, Inc., further contends that the original contribution rate of one per cent assigned to it on July 29, 1948, became final and conclusive upon the expiration of fifteen days and that, consequently, the action of the Director in revoking this rate and assigning a new rate of 2.7 was a nullity. Here, the employer relies upon the portion of section 18(c)(7)(C), (Ill. Rev. Stat. 1947, chap. 48, par. 234(c)(7)(C),) which provides: "The Director shall promptly notify each employer of his rate of contribution for each calendar year, * * *. Such rate determination shall be final and conclusive upon the employer for all purposes and in all proceedings whatsoever unless within 15 days after mailing of notice thereof, the employer files with the Director an application for review of

such rate determination, setting forth his reasons in support thereof." Section 18(c)(7)(C) does not support the contention made. It is to be observed that, while the statute specifically makes the rate determination binding upon the employer, it does not make it binding upon the Director, either expressly or by implication. The relief of unemployment is a public purpose and the Unemployment Compensation Act is an exertion of the police power of the State. (*Zelney* v. *Murphy*, 387 Ill. 492.) The State has a direct interest in the administration and enforcement of the act paramount to the personal interest of the individual employer. (*Oak Woods Cemetery Ass'n* v. *Murphy*, 383 Ill. 301.) It is well established that a governmental agency, unless expressly included within the terms of a statute of limitation, is excluded from the operation of the statute so far as public rights, as distinguished from private rights, are concerned. (*Clare* v. *Bell*, 378 Ill. 128; *People ex rel. Nudelman* v. *Superior Petroleum Co.* 372 Ill. 546.) In the absence of an express provision making an original rate determination conclusive upon the Director, it follows that the rate determination of July 29, 1948, was properly and effectively revoked on October 19, 1948.

An additional argument made by Winakor in his petition for rehearing remains to be considered. Winakor now contends that, upon the death of William Altman on January 6, 1947, the trust, as presently represented by him, succeeded to all the enterprises of Altman, and with them their unemployment experience rating, and that the subsequent transfer of two stores to Altman's, Inc., in the first part of January, 1948, did not operate to deprive the trust of its existing experience rating. In other words, Winakor wholly ignores the legal existence of Altman's, Incorporated, and asserts that he or the trust, which he characterizes as an entity, having acquired all the stores in January, 1947, was not a successor employer with Alt-

man's, Inc., in January, 1948, but that he, as trustee, was the predecessor employer and Altman's, Inc., the sole successor employer.

Analysis of the argument advanced reveals that it is founded upon two basic premises: one, that an employer transferring part, but not substantially all of his business, is entitled to retain the benefit of his experience rating; the other being that, where one person owns all or practically all the shares of a corporation, the corporate entity may be ignored. The first premise is as sound as the second is unsound. Section 18(c)(6) provides, in substance, that, whenever one employing unit succeeds to substantially all the employing enterprises of another, the experience rating of the predecessor (actually all the items used in computing an experience rating) shall become the experience rating of the successor and not of the predecessor. The necessary implication of this paragraph is that, wherever one employing unit succeeds to less than substantially all of the employing enterprises of another, the experience rating of the predecessor does not pass to the successor but is retained by the predecessor. Apart from this, it is evident that an employer who disposes of part of his business does not thereby become a new employer and cannot be deprived of the benefit of his existing employment rating.

On the other hand, the only way the trustee can show that he is a continuing predecessor employer who has transferred part of his business, and not a successor employer who acquired part of the assets of another employer, is by ignoring the legal existence of Altman's, Incorporated. This cannot be done. Although the trustee may have acquired ninety-nine per cent of the capital stock of Altman's, Incorporated, upon the death of Altman, he did not thereby become the owner of the five stores. It is elementary that stockholders of a corporation, including stockholders owning all or virtually all of the capital stock, do not hold either

the legal or equitable title to the property of the corporation. (*Wollenberger* v. *Hoover,* 346 Ill. 511; *Sellers* v. *Greer,* 172 Ill. 549.) The plain facts of this case are that, both before and after the death of Altman, the five stores were owned by Altman's, Incorporated, and that it was not until the dissolution of the corporation on December 31, 1947, that the trustee, for the first time, became the owner of any of the stores. Prior to the dissolution of the corporation and the distribution of its assets, the trustee was merely a shareholder in the corporation.

In addition, there is another equally compelling reason for holding that the trustee is a successor employer as to three stores and not a continuing predecessor employer who formerly owned all five stores. In fact, the principal fallacy in the argument advanced is not the wholly unwarranted assumption that a stockholder owns the property of the corporation, but the circumstance that, even if the corporate entity be disregarded, the trustee still cannot demonstrate that he became the owner of all five stores upon the death of·Altman. Assuming that Altman owned the stores personally and looking to what the trustee regards as the "realities of the situation," it is at once apparent that, upon Altman's death, the trustee would become the owner of only a one-half interest in the stores, while the widow, renouncing under the will, would acquire the other one-half interest. Under the circumstances, the Department of Labor, also ignoring the corporate entity, could answer that the trustee and the widow became successor employers as early as January 6, 1947. Likewise, the Department, again looking to the so-called "realities of the situation," might very well ignore the trust and make a determination that the beneficial owners of the trust assets were the real employers. This is simply illustrative of the confusion which would result upon a deviation from the true practicable legal realities that the corporation owned the five stores and the trustee owned the

assets of the trust. It follows that Altman's, Inc., and Winakor, trustee, each first acquired their respective stores upon the dissolution of Altman's, Incorporated, and, neither succeeding to substantially all of the employing enterprises of their predecessor, neither was entitled to the experience rating of the predecessor.

The judgment of the circuit court of Sangamon County is reversed and the cause remanded, with directions to enter a judgment confirming the decisions and orders of the Director of Labor.

*Reversed and remanded, with directions.*

Mr. JUSTICE DAILY, dissenting.