LAKE REGION CONFERENCE OF SEVENTH-DAY ADVENTISTS, Plaintiff-Appellee, v. SALLY A. WARD, Director of Employment Security *et al.*, Defendants-Appellants.

First District (2nd Division) No. 87—1960

Opinion filed May 17, 1988.—Rehearing denied June 17, 1988.

Neil F. Hartigan, Attorney General, of Springfield (Shawn W. Denney, Solicitor General, and Rosalyn B. Kaplan, Assistant Attorney General, of Chicago, of counsel), for appellant.

William M. Getzoff, of Getzoff & Getzoff, of Chicago, for appellee.

PRESIDING JUSTICE HARTMAN delivered the opinion of the court:

The Illinois Director of Employment Security (Director) appeals the reversal of her decision assessing unemployment insurance payments in lieu of contributions against the Lake Region Conference Association of Seventh-Day Adventists (Lake Region). The circuit court found Lake Region's employees exempt from unemployment insurance coverage.

We are asked to review whether Lake Region is estopped from denying its liability by its failure to respond to notices sent to it by the State when its former employees requested unemployment benefits and failure to respond to statements of amounts due, under section 705 of the Unemployment Insurance Act (Act) (Ill. Rev. Stat. 1977, ch. 48, par. 455); and whether the director lacked subject matter jurisdiction because Lake Region's employees were exempt from coverage under section 211.3(A) of the Act (Ill. Rev. Stat. 1979, ch. 48, par. 321.3(A)).

Lake Region, a nonprofit Illinois corporation organized for religious purposes serving Seventh-Day Adventist Church members, operates churches and schools in Michigan, Indiana, Illinois and Wisconsin. Its board of trustees hires and supervises all school personnel and determines their compensation. No school has a separate corporate charter or legal organization.

As in other States, Illinois' unemployment insurance legislation implements mandatory Federal minimum standards of coverage established by the Federal Unemployment Tax Act (FUTA) (26 U.S.C. §3301 et seq. (1982)). Although previously exempt, in 1970 a FUTA amendment required State coverage of employees of nonprofit organizations; however, employees of churches and of organizations operated primarily for religious purposes and controlled, supervised, operated or mainly supported by a church or convention or association of churches were again exempted. (St. Martin Evangelical Lutheran Church & Northwestern Lutheran Academy v. South Dakota (1981), 451 U.S. 772, 775-77, 68 L. Ed. 2d 612, 616-17, 101 S. Ct. 2142, 2144-45; 26 U.S.C. §3309(b)(1) (1982).) FUTA was again amended in 1976 to eliminate an exemption for employees of schools which were not in-

stitutions of higher education. In 1978 the Secretary of Labor announced that this change meant that church-related schools would be covered and notified the States, which began collecting unemployment taxes from such schools. The Supreme Court, however, held that the 1976 amendments did not alter the exemption for church-operated schools that had no separate legal existence from a church or association of churches. *St. Martin Evangelical Lutheran Church & Northwestern Lutheran Academy v. South Dakota*, 451 U.S. at 777-78, 784-85, 68 L. Ed. 2d at 617, 621-22, 101 S. Ct. at 2145-46, 2149; 26 U.S.C. §3309(b)(1)(A) (1982). Accord *Alabama v. Marshall* (5th Cir. 1980), 626 F.2d 366, 368-69, *cert. denied sub nom. Donovan v. Alabama* (1981), 452 U.S. 905, 69 L. Ed. 2d 405, 101 S. Ct. 3029; *Community Renewal Society v. Department of Labor* (1982), 108 Ill. App. 3d 773, 780, 439 N.E.2d 975; *Lutheran Church-Missouri Synod v. Bowling* (1980), 89 Ill. App. 3d 100, 101-02, 411 N.E.2d 526; Ill. Rev. Stat. 1979, ch. 48, par. 321.3(A).

Section 211.3(A) of the Act, in effect throughout the entire period, exempted employment services performed by those (Ill. Rev. Stat. 1979, ch. 48, par. 321.3(A)):

"In the employ of (1) a church or convention or association of churches, or (2) an organization or school which is not an institution of higher eduction, which is operated primarily for religious purposes and which is operated, supervised, controlled or principally supported by a church or convention or association of churches."

Section 302 of the Act (Ill. Rev. Stat. 1977, ch. 48, par. 382) permits employing units not otherwise subject to the Act to obtain coverage by filing a written election after written approval of the election by the Director. Section 1404 of the Act (Ill. Rev. Stat. 1977, ch. 48, par. 554) allows nonprofit organizations as defined in section 211.2 to elect to pay in lieu of contributions amounts equal to the full amount of regular benefits and half the amount of extended benefits actually paid to their employees, upon filing written notice with the Director, who then serves notice of his approval or disapproval on the organization. Except as provided by section 211.3, employment includes service after December 31, 1971, by persons working for nonprofit organizations. Ill. Rev. Stat. 1977, ch. 48, par. 321.3.

Lake Region's treasurer testified that a Department of Labor auditor in 1978 or 1980 informed him that although Lake Region did not contribute to unemployment insurance payments, it had to file reports. Lake Region's executive secretary testified that its executive committee had approved an election of unemployment insurance cov-

erage, but such action could not be found in the minutes and no document was found indicating that Lake Region had ever given its written consent or that the Director had approved such a request.

An affidavit notice form, stamped August 11, 1978, applying to a Lake Region employee, contains a handwritten notation reading: "[A]sked to be placed in reimbursable account." On May 13, 1980, the treasurer, then listing his title as accountant, filled out a form letter indicating that an employee received wages for each quarter of 1978 from Lake Region that were covered under the Act. Employer's contribution reports were filled out by the treasurer from October 1979 through December 1982, all showing an entry for total wages paid for covered employment but "0" for contribution due and total payment due. Department of Labor records indicate that forms BEN—305, notices of findings to base period employers, were sent to Lake Region on July 7, 1979, May 3, 1981, June 6, 1981, and June 13, 1981, for four different employees, followed by statements of amounts due for benefits paid, mailed between October 30, 1979, and March 1, 1982. Lake Region filed no protests to any of the forms submitted.

On May 18, 1982, the director sent Lake Region a notice of determination and assessment that requested a remittance of $14,629 for unpaid contributions of $11,849.96, penalties of $192 and the remainder for interest starting on August 31, 1981, to which were attached copies of the relevant statements of amounts due for benefits paid. Lake Region objected to the notice in a letter of June 3, 1982, declaring it was exempt under the Supreme Court decision, and on June 18, 1982, Lake Region submitted the following: an affidavit of D. C. Keith, Sr., one of its officers, who averred that Lake Region was the legal organization of the Seventh-Day Adventist Church, that it operated and controlled its elementary and secondary schools in Illinois and had done so since 1976; a July 21, 1981, letter from the Bureau of Employment Security indicating that the Illinois Association of Seventh-Day Adventists operated primarily for religious purposes and that only separately organized activity might be subject to unemployment insurance coverage; and Lake Region's articles of incorporation.

Lake Region's protest was stricken by the Director on the ground that the statements of amounts due for benefits paid became final and conclusive when Lake Region had failed to request their review within 20 days of their mailing, according to section 1404(B) of the Act amended in 1980. (Ill. Rev. Stat. 1981, ch. 48, par. 554(B).) Lake Region protested the striking order and petitioned for a hearing. At an administrative hearing held on September 11, 1984, Lake Region's attorney testified as to the religious nature of the organization, its ex-

empt status, and suggested that Lake Region did not protest earlier because its status was not determined until court decisions in 1981.

On September 26, 1984, the hearing officer issued a report in which he stated that agency records indicated the following: effective January 1, 1978, Lake Region elected to become a reimbursable employer; it failed to file wage reports for the last quarter of 1978, the first two quarters of 1979 and the first quarter of 1981; and also failed to object to notices sent concerning claims for benefits and benefits paid. The hearing officer concluded that: the issue of whether Lake Region was an exempt employer under section 211.3(A) was not relevant; Lake Region did not present evidence controverting the agency's records that it had elected coverage; and Lake Region's failure to object to notices it received allowed the determinations in those notices to become final under sections 2202 and 1404(B) of the Act (Ill. Rev. Stat. 1977, ch. 48, par. 682; Ill. Rev. Stat. 1981, ch. 48, par. 554(B)). On November 27, 1984, the Director issued her decision adopting and affirming the hearing officer's report and finding that Lake Region owed $11,849.96 for benefits paid, $192 as a penalty and interest beginning November 30, 1979.

On December 6, 1984, Lake Region assertedly filed a complaint for administrative review and declaratory judgment in the circuit court. After a hearing, the circuit court remanded the cause to the agency for further administrative hearings to determine whether Lake Region was tax exempt under the Act, to produce records indicating election of coverage and approval of such election under section 302 (Ill. Rev. Stat. 1977, ch. 48, par. 382), and to produce any records concerning Lake Region's reimbursable employer status. The circuit court also dismissed both counts of the complaint.

At further administrative hearings, Lake Region's witnesses testified as to the nature of the organization and the reasons it submitted such reports as it did submit. Lake Region's attorney argued that the Director mistakenly included employees of its primary and secondary schools in the unemployment insurance system, relying on *St. Martin Evangelical Lutheran Church & Northwestern Lutheran Academy v. South Dakota* (1981), 451 U.S. 772, 68 L. Ed. 2d 612, 101 S. Ct. 2142, to establish that it was exempt from unemployment insurance payments.

The hearing officer concluded in his report of June 3, 1986, that Lake Region was not exempt; the statements of amount due became final when it failed to object after receiving them; while no sufficient evidence indicated Lake Region elected coverage, it did file various reports representing it paid insured wages; and to attack the exemp-

tion issue Lake Region should have complied with the termination of coverage provision of section 301 of the Act (Ill. Rev. Stat. 1977, ch. 48, par. 381). The officer also concluded that Lake Region was estopped from a collateral attack on coverage and jurisdiction by sections 705 and 2202 (Ill. Rev. Stat. 1977, ch. 48, pars. 455, 682) and recommended upholding the Director's decision of November 28, 1984. On June 6, 1986, Lake Region filed objections to the report of the Director's representative, arguing it failed to address directly the exemption issue, noting that it conceded there was no sufficient evidence to document a section 302 election and contending that lack of jurisdiction was not a collateral issue.

On June 16, 1986, the Director issued her decision, finding that when Lake Region's treasurer was interviewed in 1978 by an agency auditor, it was determined Lake Region was an employer under the Act and Lake Region acquiesced by filing reports. The Director claimed authority under the Act to determine if Lake Region was a covered employer, thus asserting she had jurisdiction, and cited *Department of Finance v. Gold* (1938), 369 Ill. 497, 17 N.E.2d 13, for the proposition that failure to timely advance a defense to a tax estopped Lake Region from later raising such a defense. The Director affirmed and adopted the report of her representative.

On June 26, 1986, Lake Region filed its second complaint for administrative review and declaratory judgment, maintaining that it was exempt from the Act under section 211.3(A); it never elected coverage in writing under section 302; and the Director's decision violated constitutional protections, including equal protection and due process. The Director filed a motion to strike and dismiss the second count on October 21, 1986, alleging that only administrative review was appropriate.

Following a hearing, on May 15, 1987, the circuit court dismissed the declaratory judgment count, but found that Lake Region qualified for the exemption of section 211.3(A) and that no section 302 election occurred, thus the Director lacked subject matter jurisdiction. The circuit court also held that estoppel did not apply since Lake Region was excluded from the definition of employer; Lake Region was not an employing unit subject to mandatory contribution that had elected to be a reimbursable employer under section 1404; and, since coverage was never elected, Lake Region had no duty to request termination. The circuit court reversed the Director's ruling under count I of the complaint. Count II of the complaint was dismissed.

## I

The Director asserts Lake Region is estopped from denying its liability for unemployment insurance benefits paid to its former employees by its failure to object to the notices of findings and statements of amounts due for benefits paid that it received in the period 1979-82.

The Director relies upon section 705 of the Act, which provides that when a finding that a claimant received wages for insured work becomes final, any employing unit which was a party to such finding and received notice thereof and an opportunity to be heard is estopped to deny it was an employer under the Act and that its wages were paid for insured work. (Ill. Rev. Stat. 1977, ch. 48, par. 455.) Lake Region maintains that the provisions of the Act dealing with estoppel and finality merely relate to fact-finding procedures by a claims adjudicator and agrees with the circuit court that since Lake Region is not covered by the definition of "employer" under the Act, estoppel would not apply.

Section 705 of the Act provides, in part (Ill. Rev. Stat. 1977, ch. 48, par. 455), that any final finding made by a claims adjudicator in which a claimant has been paid wages for insured work by any employing unit forever estops an employing unit to deny that it was an employer as defined by the Act and that the wages paid by such employing unit to the claimant are deemed wages for insured work. Under section 1404(B) (Ill. Rev. Stat. 1981, ch. 48, par. 554(B)), nonprofit organizations which have elected payments in lieu of contributions shall receive statements of amounts due from the Director payable in 30 days; such statements shall be "final and conclusive upon the nonprofit organization" unless it files an application for revision within 20 days. Section 2200 of the Act (Ill. Rev. Stat. 1977, ch. 48, par. 680) allows the Director to issue a determination and assessment to any employing unit, which has the burden of disproving that assessment.

In the case *sub judice,* agency records indicate that notices of findings and statements of benefit amounts due were sent to Lake Region in 1979 through 1981, containing the warning that if no application for revision was filed within 15 or 20 days from the mailing date the statements became final and conclusive for all purposes. No such revision applications were filed. Nevertheless, Lake Region promptly protested the tax assessment and followed statutory procedures in invoking judicial review.

■ To be noted is that the Secretary of Labor's interpretation of FUTA had not been overturned by the United States Supreme Court at the time Lake Region began filing its reports and receiving notices. There is nothing in the record to show that Lake Region voluntarily

made a written election for statutory coverage nor is there any evidence of written approval thereof by the Director as required by statute. (Ill. Rev. Stat. 1977, ch. 48, par. 382.) Lake Region reasonably could have believed, prior to *St. Martin Lutheran Evangelical Church & Northwestern Lutheran Academy v. South Dakota* (1981), 451 U.S. 772, 68 L. Ed. 2d 612, 101 S. Ct. 2142, decided on May 26, 1981, that it had involuntarily become subject to the Act and only realized afterwards that it was exempt. To enforce the statutory estoppel provision in the present case would be inequitable, and we find no basis for reversal of the circuit court's refusal to invoke estoppel under these circumstances.

## II

The Director next contends that the circuit court erred in finding an absence of subject matter jurisdiction, asserting that as the Director can determine entitlement to an exemption, an error in making such a determination is not jurisdictional. Lake Region maintains that the Directors subject matter jurisdiction derives solely from the Act; the Director confuses the power to determine whether she has jurisdiction with jurisdiction itself; and qualifying for an exemption under section 211.3(A) deprives the agency of jurisdiction since agency actions beyond statutory authority are void.

 Subject matter jurisdiction cannot be waived (*Consolidation Coal Co. v. Department of Labor* (1985), 138 Ill. App. 3d 541, 543, 485 N.E.2d 1102), nor can such jurisdiction be acquired by acquiescence or stipulation of the parties. (*People ex rel. Illinois Department of Human Rights v. Arlington Park Race Track Corp.* (1984), 122 Ill. App. 3d 517, 521, 461 N.E.2d 505.) An agency, as a statutory creation, is limited to authority granted by statute. (*Schalz v. McHenry County Sheriff's Department Merit Comm'n* (1986), 113 Ill. 2d 198, 202-03, 497 N.E.2d 731; *Abatron, Inc. v. Department of Labor* (1987), 162 Ill. App. 3d 697, 700, 515 N.E.2d 1336.) Agency actions beyond the scope of administrative authority are void. *Board of Trustees v. Washburn* (1987), 153 Ill. App. 3d 482, 485, 505 N.E.2d 1209; see *City of Chicago v. Fair Employment Practices Comm'n* (1976), 65 Ill. 2d 108, 112-13, 357 N.E.2d 1154.

██ A reviewing court is not bound by an agency's erroneous construction of a statute and cannot let such a decision stand. *Winakor v. Annunzio* (1951), 409 Ill. 236, 248, 99 N.E.2d 191; *Pesce v. Board of Review* (1987), 161 Ill. App. 3d 879, 881, 515 N.E.2d 849; *Harrisburg-Raleigh Airport Authority v. Department of Revenue* (1987), 163 Ill. App. 3d 253, 254, 516 N.E.2d 967.

■ Here, the agency's interpretation of the statute was erroneous. Under similar statutory language, employers such as Lake Region have been held exempt from application of the statutory scheme. (*St. Martin Evangelical Lutheran Church & Northwestern Lutheran Academy v. South Dakota,* 451 U.S. at 777-78, 785, 68 L. Ed. 2d at 617, 622, 101 S. Ct. at 2145-46, 2149-50. Accord *Lutheran Church-Missouri Synod v. Bowling,* 89 Ill. App. 3d at 101-02; see *Community Renewal Society v. Department of Labor,* 108 Ill. App. 3d at 780.) Subject matter jurisdiction in this instance flows from the empowering statute and, in this case, by virtue of the exemption requiring no action by the Director, she lacked subject matter jurisdiction *ab initio.* Except for the purpose of determining whether jurisdiction existed, the Director was unauthorized to take any action against Lake Region for tax collection purposes. The circuit court did not err in so holding.

Accordingly, there is no basis upon which to disturb the judgment of the circuit court, which is affirmed.

Affirmed.

STAMOS* and SCARIANO, JJ., concur.

———

*Justice Stamos participated in the decision of this case prior to taking office as a supreme court judge.