# Illinois Official Reports

## Appellate Court

***Unity Christian School v. Rowell*, 2014 IL App (3d) 120799**

| | |
|---|---|
| Appellate Court Caption | UNITY CHRISTIAN SCHOOL OF FULTON, ILLINOIS, named as Unity Christian School, Inc., d/b/a Unity Christian School, a Not-for-Profit Corporation, Plaintiff-Appellee, v. JAY ROWELL, Director, The Department of Employment Security, and THE DEPARTMENT OF EMPLOYMENT SECURITY, an Agency of the State of Illinois, Defendants-Appellants. |
| District & No. | Third District<br>Docket No. 3-12-0799 |
| Filed | March 11, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Although plaintiff religious school satisfied two of the three requirements necessary to be exempt from the Unemployment Insurance Act, namely, that it was not an institution of higher education and that it was operated primarily for religious purposes, it failed to show that it met the requirement that it was operated, supervised, controlled or principally supported by a church or convention or association of churches; therefore, the decision of the Director of the Department of Employment Security finding that the school was subject to the Act was affirmed. |
| Decision Under Review | Appeal from the Circuit Court of Whiteside County, No. 11-MR-72ST; the Hon. John L. Hauptman, Judge, presiding. |
| Judgment | Director confirmed; circuit court reversed, and cause remanded to the circuit court of Whiteside County. |

| Counsel on Appeal | Lisa Madigan, Attorney General, of Chicago (Paul Racette (argued), Assistant Attorney General, of counsel), for appellants. |
| | |
| | Timothy B. Zollinger (argued), of Ward, Murray, Pace & Johnson, of Sterling, for appellee. |
| | |
| Panel | JUSTICE SCHMIDT delivered the judgment of the court, with opinion. |
| | Justice Carter concurred in the judgment and opinion. |
| | Presiding Justice Lytton concurred in part and dissented in part, with opinion. |

## OPINION

¶ 1    The ultimate issue before this court is whether Unity Christian School (Unity) met its burden before the Department of Employment Security (Department) to establish that it is exempt from the requirement to make compulsory contributions to the unemployment system. Unity contends it is entitled to a religious exemption. This issue involves two subissues: (1) Is Unity operated primarily for religious purposes? and (2) Is Unity controlled or primarily supported by a church or group of churches?

¶ 2                              BACKGROUND

¶ 3    Unity was originally incorporated as Fulton Community Christian School, an Illinois not-for-profit corporation. According to a summary of the school's history, it began in 1921 in the basement of the First Christian Reformed Church. Over the years, it has grown into a school with enrollment exceeding 170 students. Unity educates students from preschool through the twelfth grade.

¶ 4    After Unity's former employee, Daniel Bierma, filed an application with the Department for unemployment insurance benefits, the Department determined that Unity and its employees were covered by the state unemployment system. The Unemployment Insurance Act (the Act) (820 ILCS 405/100 *et seq.* (West 2010)) provides economic relief to the involuntarily unemployed. The Department collects compulsory contributions from employers and pays benefits to eligible unemployed persons. The Department subsequently issued contribution rate determinations to Unity on December 29, 2010, for the years 2007 through 2011.

¶ 5    Unity filed applications for review of the determinations. It asserted that its contribution rates should be zero for each year, as it is exempt from coverage by the state unemployment system. Unity cited section 211.3(A) of the Act, which exempts schools that are not institutions of higher education, are operated primarily for religious purposes, and are operated, supervised, controlled or principally supported by a church or convention or association of churches. 820 ILCS 405/211.3(A) (West 2010).

- 2 -

¶ 6     On April 26, 2011, a Department director's representative (hereinafter DR) conducted an evidentiary hearing. Unity presented one witness, Dick Ritzema, the superintendent and principal of Unity. Ritzema testified to the Christian nature of the school. He stated that it is the school's desire to ensure that a proper religious education is provided to all students. The school day begins with Bible reading and prayer, and the scriptural teaching is not only during religion class, but also throughout the rest of the day. Teachers are expected to integrate biblical principles into all the subjects. The schedule includes weekly chapel attendance by the kindergarten through sixth-grade students, and biweekly chapel attendance by the older students. Continuing education requirements exist for teachers, with a focus on obtaining fresh ideas on the integration of faith within teaching the various subjects. According to Ritzema, this integration of faith training specifically included: (1) including the Bible in every subject area; (2) engaging in prayer throughout the school day for a variety of purposes; and (3) constant integration of faith in all subjects taught.

¶ 7     Unity also offers sports programs for soccer, baseball, softball, basketball, volleyball, and track and field. The school graduates close to 100% of its students. Ritzema stated that college attendance has shifted more toward community colleges and somewhere between 65% to 90% of students attend some type of college.

¶ 8     As evidence of its integration of faith and education, as well as support from the Christian Reformed Church, Unity provided the DR with the school's mission statement, constitution, and history. Unity's mission statement provides that, "[i]n covenant with Christian families, Unity Christian School teaches students the Truth from a Christ-centered perspective for lives of discipleship." The constitution provides that the school is not an ecclesiastical body nor is it subject to any ecclesiastical organization, but that Christian education has its foundation in the "Creator-creature relationship taught in the scriptures." Finally, the school history, in addition to outlining the growth of the school, attests to the donation of $150,000 in the fall of 2007 by a group of 17 Christian Reformed churches in the Chicago area.

¶ 9     At the conclusion of testimony, the DR issued a recommended decision, finding that Unity had not met its burden of proof. The DR reasoned that Unity was operated primarily for secular educational purposes, not religious purposes. He, therefore, recommended that the Director's orders be affirmed.

¶ 10    Unity filed objections to the DR's recommended decision, contending, *inter alia*, that the exemption of parochial elementary and secondary schools from contributions under the Act has long been established. It also argued that the Department did not promptly issue the contribution rate determinations for the years 2007 through 2010, as required by the Act.

¶ 11    The Director overruled Unity's objections, adopted the DR's recommended decision, and affirmed the orders denying the applications for review. The Director noted that Unity was separately incorporated and autonomous. Furthermore, he determined that "[t]he preponderance of the evidence is that [Unity's] *curriculum is primarily secular in nature,* although religious subjects are taught." (Emphasis added.)

¶ 12    On September 7, 2011, Unity filed a three-count complaint in the circuit court, naming the Department as the sole defendant. Count I sought administrative review of the Director's decision that Unity and its workers were covered by the state unemployment system. Count II sought administrative review of the Department's decision to assess benefit charges against Unity regarding its former employer, Bierma. In count III, Unity alleged that requiring it to

participate in the state unemployment system would violate the Religious Freedom Restoration Act (Religious Freedom Act) (775 ILCS 35/1 *et seq.* (West 2010)). The Department filed an answer consisting of the record before the agency.

¶ 13    In November 2011, Unity filed an amended complaint adding the Director as a defendant. The Department and the Director (collectively the Department) moved to dismiss count III regarding the Religious Freedom Act, arguing that the issue had not been raised at the administrative level and Religious Freedom Act claims cannot be properly joined with claims under the Administrative Review Law (735 ILCS 5/3-101 *et seq.* (West 2010)). In response, Unity contended that it could not have raised the Religious Freedom Act issue before the Department because the Department lacks authority to consider Religious Freedom Act claims; thus, the joinder of the Religious Freedom Act count to the Administrative Review Law counts was permissible. The circuit court subsequently denied the motion to dismiss, but stayed discovery on the Religious Freedom Act count pending disposition of the administrative law claims.

¶ 14    Both Unity and the Department filed memorandums in support of their respective claims. The Department indicated that it was not contesting count II of Unity's amended complaint and agreed that the benefit charges assessed regarding Bierma should be cancelled.

¶ 15    On August 20, 2012, the trial court reversed the Department's decision, finding it was erroneous in light of Unity's compelling arguments. The court dismissed count II, noting the parties consented and agreed to cancel those charges assessed regarding Bierma's benefits. That same day, the trial court granted the Department's motion for a Rule 304(a) (Ill. S. Ct. R. 304(a) (eff. Feb. 26, 2010)) finding in regard to count I, and stayed count III pending the outcome of this appeal.

¶ 16                                    ANALYSIS

¶ 17    At the outset, the parties appear to have conflicting views as to the proper standard of review to be applied. The standard of review in the context of an appeal from an administrative review, however, is well settled in Illinois.

¶ 18    In the case of administrative review, this court reviews the Department's decision, not that of the circuit court. *National Data Services of Chicago, Inc. v. Director of Employment Security*, 319 Ill. App. 3d 25, 29 (2001). The determination of whether an employer has proven that it falls within an exemption to coverage under the state unemployment system is a mixed question of law and fact. *Carpetland U.S.A., Inc. v. Illinois Department of Employment Security*, 201 Ill. 2d 351, 369 (2002); *SMRJ, Inc. v. Russell*, 378 Ill. App. 3d 563, 571 (2007).

¶ 19    "A mixed question of law and fact is one involv[ing] an examination of the legal effect of a given set of facts. [Citation.] Stated another way, a mixed question is one in which the historical facts are admitted or established, the rule of law is undisputed, and the issue is whether the facts satisfy the statutory standard ***." (Internal quotation marks omitted.) *AFM Messenger Service, Inc. v. Department of Employment Security*, 198 Ill. 2d 380, 391 (2001). Such mixed questions are reviewed for clear error. *Carpetland*, 201 Ill. 2d at 369. Under the clearly erroneous standard, this court must accept the administrative agency's decision unless we are "left with the definite and firm conviction that a mistake has been committed." (Internal

quotation marks omitted.) *Russell*, 378 Ill. App. 3d at 572 (quoting *AFM Messenger*, 198 Ill. 2d at 393).

¶ 20                    I. Religious Exemption to Coverage Under the
                              State Unemployment System

¶ 21        The Act (820 ILCS 405/100 *et seq.* (West 2010)), through the collection of compulsory contributions from the employer and the payment of benefits to eligible unemployed persons, provides economic relief to those who are involuntarily unemployed. *AFM Messenger*, 198 Ill. 2d at 396. Employers make payments into the state unemployment system. Some employers, however, are exempt from coverage under the state system. At issue here is section 211.3, which provides as follows:

> "For the purpose of Section 211.2, the term 'employment' shall not include services performed
>
> A. In the employ of (1) a church or convention or association of churches, or (2) an organization or school which is not an institution of higher education, which is operated primarily for religious purposes and which is operated, supervised, controlled or principally supported by a church or convention or association of churches[.]" 820 ILCS 405/211.3 (West 2010).

¶ 22        The statute, therefore, provides that where a school is not an institution of higher education and is not separately incorporated from a church, convention or association of churches, it is exempt from coverage under the state unemployment system because the teachers and other personnel are direct employees of the church or convention of churches. 820 ILCS 405/211.3(A)(1) (West 2010); *Lake Region Conference of Seventh-Day Adventists v. Ward*, 170 Ill. App. 3d 999, 1000-01 (1988). Such a school need not prove that it is operated primarily for religious purposes because it is, in fact, an arm of the church.

¶ 23        However, where a school is separately incorporated as is Unity, it must prove three things to qualify for exemption from the state unemployment system: (1) that it is not an institution of higher education; (2) that it is operated primarily for religious purposes; and (3) that it is operated, supervised, controlled or principally supported by a church or convention or association of churches. 820 ILCS 405/211.3(A)(2) (West 2010); see also *St. Martin Evangelical Lutheran Church v. South Dakota*, 451 U.S. 772, 783 (1981) (analyzing the corresponding provisions of the Federal Unemployment Tax Act (26 U.S.C. §§ 3301-3311 (1976 & Supp. III))). As these requirements are stated in the conjunctive, all of them must be satisfied for the exemption to apply. *Carpetland*, 201 Ill. 2d at 355.

¶ 24        There is no dispute that Unity is not an institution of higher education, thereby meeting the first requirement. However, the Department contends that Unity failed to meet either of the other two requirements. Our analysis, therefore, turns on whether Unity was operated primarily for religious purposes and whether it was operated, supervised, controlled or principally supported by a church or a convention or association of churches.

¶ 25                    A. Operated Primarily for a Religious Purpose

¶ 26        The Department contends that because Unity failed to prove that it is operated, supervised, controlled or principally supported by a church or convention of churches, our review of this

issue is unnecessary. However, both the recommended decision of the DR and the final decision of the Director rested solely on a finding that Unity was not operated primarily for a religious purpose. We, therefore, find that a discussion of whether or not Unity is operated for a primarily religious purpose is warranted.

¶ 27 The majority of cases interpreting section 211.3(A) of the Act or its federal counterpart section 3309(b)(1)(B), which we note the Illinois legislature adopted verbatim, have hinged upon a determination of what constitutes "operated, supervised, controlled or principally supported by a church," sidestepping any discussion about what it means to "operate primarily for a religious purpose." For example, in *St. Martin Evangelical Lutheran Church*, 451 U.S. at 782 n.12, the Supreme Court held the petitioners exempt from Federal Unemployment Tax Act (26 U.S.C. § 3309(b)(1)(A) (1976)) coverage under section 3309(b)(1)(A) because the school had no separate legal identity from the church, thus leaving the issue of coverage under section 3309(b)(1)(B) for another day. See also *Community Renewal Society v. Department of Labor*, 108 Ill. App. 3d 773, 779 (1982) (in remanding the case to the Director due to his errorneous interpretation of section 211.3(A)(2), the court noted that Illinois courts have generally " 'been quite cautious in attempting to define, for tax [and unemployment insurance] purposes, what is or is not a "religious" activity or organization–for obvious policy and constitutional reasons' " (quoting Bruce R. Hopkins, The Law of Tax-Exempt Organizations § 8, at 132 (3d ed. 1979))).

¶ 28 However, the question of whether similar organizations are operated primarily for religious purposes has not gone unlitigated, with a plethora of cases from other jurisdictions yielding mixed results. See *Mid Vermont Christian School v. Department of Employment & Training*, 885 A.2d 1210, 1212-13 (Vt. 2005) (affirming the department's conclusion that "although the school's Bible instruction, inculcation of Christian values and glorification of God were integral parts of the educational mission, the primary purpose is to provide a thorough education," and school was not operated for primarily religious purposes); but see *Community Lutheran School v. Iowa Department of Job Service*, 326 N.W.2d 286, 291 (Iowa 1982) (finding that separately incorporated parochial school was created "to rear children in the Christian faith 'in all their schooling,' " and was exempt as it operated primarily for religious purposes); *Nampa Christian Schools Foundation, Inc. v. State*, 719 P.2d 1178, 1183-84 (Idaho 1986) (holding that independent Christian School is operated primarily for religious purposes where teachers were required to have beliefs consistent with the school's statement of faith, be heavily involved in local churches and integrate the school's religious position into the instruction in the nondemoninational school "organized by a group of parents interested in providing a 'Christian' education for high school students"); see also *Baltimore Lutheran High School Ass'n v. Employment Security Administration*, 490 A.2d 701, 709 (Md. 1985) (Maryland Court of Appeals affirms the decision of the board finding that "a reasoning mind reasonably could have reached the conclusion that the School was not operated primarily for religious purposes").

¶ 29 The parties do not cite, nor does our research uncover, any cases within Illinois that directly address whether a parochial school is considered to be operating primarily for religious purposes when it is separately incorporated from the church or association of churches. Rather, the Department relied upon *St. Augustine's Center for American Indians, Inc. v. Department of Labor*, 114 Ill. App. 3d 621 (1983), in both the Director's final decision and on appeal. In that case, plaintiff operated the center out of a three-story building with a chapel located on the first

floor. *Id*. at 622. Plaintiff helped approximately 2,500 American Indian families annually by way of monetary assistance, food, clothing, job training, counseling and other services. *Id*. Mass was offered in the chapel twice daily and on Sundays; confessions were heard at least once weekly and priests offered the full range of sacraments. *Id*. The Director found that plaintiff was not exempt from coverage under the Act, and the Cook County circuit court affirmed the decision. *Id*. at 623. On appeal, the First District concluded that while the record indicated that plaintiff offered religious services, the "primary purpose" of the center was to offer social services and the religious purpose was only secondary. *Id*. at 626.

¶ 30    *St. Augustine's* is easily distinguishable, and we find it does little to unmuddy the murky waters that are "religious purposes" under section 211.3(A)(2) of the Act. We decline at this point to expound an all-inclusive definition of what constitutes a religious purpose within the context of elementary and secondary religious schools.

¶ 31    Yet, as it stands now, we cannot fathom a different primary purpose other than religion in Unity's case. The only commonality between *St. Augustine's* and the instant case is that both St. Augustine's Center and Unity are separately incorporated from any affiliate churches. The similarities end there. The Department argues that "[w]ithout demonstrating that the majority of class time was spent on religious instruction as opposed to secular topics such as mathematics, grammar, or science, Unity could not possibly prove that it was operated primarily for a religious purpose." This argument defies reality. Under this construct, no separately organized parochial school would be subject to exemption.

¶ 32    The Department's argument ignores the fact that a school that is not an institution of higher education is required to teach secular subjects. See 105 ILCS 5/27-1, 27-22 (West 2006). Only some types of preseminary or novitiate schools would likely qualify for exemption under the Department's strict and narrow reading of the Act. Why would the General Assembly incorporate an exception that is unobtainable? By the Department's reasoning, only grade or high schools devoting the majority of class time to religious instruction would be exempt from the state's unemployment system, but those schools would simultaneously be violating the law. If the parents of Unity's students wanted them to attend a school that did not incorporate the principles of their Christian faith, they would simply send them to public schools. Even according to its constitution, Unity's principal goal is to incorporate faith into the everyday life and education of its students. Under the current state of the law, this cannot be achieved in a public school. Religion is Unity's *raison d'être*.

¶ 33    The Department's conclusion was based on a finding that Unity's "curriculum is primarily secular in nature." Well, of course it is. Just like the curricula in every other parochial school in the state. But the primary purpose of the school is to teach those secular subjects in a faith-based environment.

¶ 34    We, therefore, find that Unity is operated for primarily religious purposes. The fact that secular subjects are necessarily taught makes that no less true. The Department's finding to the contrary is clearly erroneous. Yet, the Department's decision must be confirmed. As explained below, it is clear from the record that the school failed to prove that it was operated, supervised, controlled or principally supported by a church or convention or association of churches.

¶ 35                    B. Operated, Supervised, Controlled or Principally Supported by

a Church, Convention or Association of Churches

¶ 36     The Department alternatively argues that Unity failed to prove that it was operated, supervised, controlled, or principally supported by a church or group of churches. On this point, we agree.

¶ 37     Unity contends that the Director did not address this prong, nor did he rely upon it in denying Unity's request for review. A review of the record indicates both the DR's recommended decision and the Director's final decision held only that Unity was not operated for a primarily religious purpose. However, those findings do not prevent this court from considering whether Unity was operated, supervised, controlled or principally supported by the First Christian Reformed Church. We may affirm an agency's decision for any basis that appears on the record, notwithstanding the fact that those grounds were not the ones relied upon by the agency. *Jakstas v. Koske*, 352 Ill. App. 3d 861, 865 (2004); see also *Younge v. Board of Education of the City of Chicago*, 338 Ill. App. 3d 522 (2003).

¶ 38     In support of its contention, the Department points to Ritzema's testimony and Unity's school constitution. The constitution, it opines, established that Unity is neither an ecclesiastical body nor subject to any ecclesiastical organization. Unity's governing body, which is composed mainly of parents of current and former students, is autonomous. Finally, the Department pointed to testimony where Unity suggested during administrative review that if it was ordered to make such contributions under the Act, it would be required to raise tuition–not that it would have to seek funding from a church or convention or association of churches.

¶ 39     Unity, on the other hand, argues that there is uncontroverted evidence showing that it is supported by Christian reformed churches in the area. Specifically, Unity again points to the fact that at its inception in 1921, it was run out of the basement of the First Reformed Christian Church. This fact is duly noted, but fails to demonstrate how the school is *currently* supported principally by the churches. As the Department points out, Unity is, 92 years later, a separately incorporated entity in a separate building with a constitution that states it is not affiliated with any ecclesiastical body.

¶ 40     As the party arguing for exemption, the school has the burden of proving it meets the requirements of the Act, and debatable questions are resolved in favor of taxation. See *St. Augustine's Center for American Indians, Inc.*, 114 Ill. App. 3d at 624 (citing *Ducks Unlimited, Inc. v. Grabiec*, 133 Ill. App. 2d 134, 140 (1971)). The school's humble beginnings in the basement of the church, without more, does not prove that the school is still principally supported by the churches. Similarly, a one-time donation in 2007 of $150,000 from Chicago-area churches to a school with an enrollment of 170 students does not show that the school is principally operated or supported by those churches. The school failed to provide any other budgetary information either to the Department or the trial court on administrative review. The record is devoid of any documentation displaying a financial breakdown of tuition, donations, or funding from the First Reformed Christian Church, or any other information that would allow a fact finder to determine that the school is principally supported by a church or association of churches. We cannot say that the school met its burden of proof on this element.

CONCLUSION

For the foregoing reasons, the judgment of the circuit court of Whiteside County is reversed and the decision of the Director of the Department of Employment Security is confirmed. This case is remanded for further proceedings on the remaining count.

Director confirmed; circuit court reversed, and cause remanded to the circuit court of Whiteside County.

PRESIDING JUSTICE LYTTON, concuring in part and dissenting in part.

I concur with the majority's decision to confirm the decision of the Director because Unity failed to prove that it was operated, supervised, controlled, or principally supported by a church or group of churches. However, I disagree with the majority's need to unnecessarily review whether Unity was operated primarily for religious purposes and, furthermore, I dissent from its conclusion that Unity met that requirement.

I

I find the majority's discussion of whether Unity was operated primarily for a religious purpose to be unnecessary and gratuitous. As explained by the majority, in order for a school to prove that it is exempt from coverage under the state unemployment system, it must prove (1) that it is operated primarily for religious purposes, *and* (2) that it is operated, supervised, controlled or principally supported by a church or convention or association of churches. 820 ILCS 405/211.3(A)(2) (West 2010). Both requirements must be met for the exemption to apply. See *Bethania Ass'n v. Jackson*, 262 Ill. App. 3d 773, 779 (1994).

The majority and I unanimously agree that Unity was not operated, supervised, controlled or principally supported by a church or convention or association of churches. That resolves the case, and the result is to confirm the Director's decision. Thus, the majority's discussion about whether Unity is operated primarily for religious purposes is hardly essential to the resolution of this matter. Although it reflects the majority's thoughts on this issue, it has no effect on the merits of this case and borders on *dicta*. See *Nationwide Advantage Mortgage Co. v. Ortiz*, 2012 IL App (1st) 112755, ¶ 30 (*dicta* is defined as "comments in a judicial opinion that are unnecessary to the disposition of the case").

II

Nevertheless, I will reluctantly comment on the merits of this issue since the majority has discussed it at such length. I disagree that Unity showed that it was "operated primarily for religious purposes" for a very practical reason: a failure of proof to sustain the exemption.

The primary rule of statutory interpretation and construction is to ascertain and effectuate the true intent of the legislature. *Wisnasky-Bettorf v. Pierce*, 2012 IL 111253, ¶ 16. In interpreting a statute, a court must give the language its plain and ordinary meaning. *Id*. Statutes should be construed so that no term is rendered superfluous or meaningless. *Id*.

Here, the legislature created an exemption from unemployment insurance for schools that meet certain criteria. See 820 ILCS 405/211.3(A)(2) (West 2010). The first prong of the

exemption requires that a school be "operated primarily for religious purposes." "Primarily" means "pre-eminently" or "fundamentally." *People ex rel. Hartigan v. Dynasty System Corp.*, 128 Ill. App. 3d 874, 882 (1984).

¶ 53    I agree with the majority that the standard for proving that a school is operated primarily for religious purposes should not be so high that it is "unobtainable." However, I find that the majority has gone to the opposite extreme–finding that a school is operated primarily for religious purposes when it includes any amount of religious instruction. Such a ruling is inconsistent with the plain language of the statute and makes the first prong of the exemption meaningless. Every religious school will be able to establish that it is "operated primarily for religious purposes" by including even the slightest amount of religious education in its curricula. This could not have been the intent of the legislature. By including the word "primarily" in the statute's language, the legislature must have intended that a school show that its purposes are preeminently and fundamentally religious.

¶ 54    For a school to show that it is operated preeminently and fundamentally for religious purposes, it must provide evidence of the substantive content of its courses and the instructional methods used by its teachers.[1] See *Employment Security Administration, Department of Human Resources v. Baltimore Lutheran High School Ass'n*, 436 A.2d 481, 489 (Md. 1981). "In the absence of evidence to show the substantive content of both theological and nontheological courses, and the instructional methods employed in these courses, there is no basis upon which to make [the] determination [that a school is operated primarily for religious purposes]." *Id*.

¶ 55    In *Baltimore Lutheran*, the Maryland Court of Appeals determined that there was insufficient evidence to show that a school was operated primarily for religious purposes despite testimony that religion is taught in all classes and all teachers are "trained to teach all subjects from a Christian viewpoint" where (1) "no details were provided as to the impact of religion on the instructional methods employed and the substantive content presented," (2) "no teacher presented any evidence to show how teaching a nontheological course from a Christian viewpoint *** differed from teaching such a course according to the academic requirements of the subject matter and the standards established by the State Department of Education," and (3) "there was no evidence to show whether the school subscribes to and follows the principles of academic freedom." *Id*.

¶ 56    Here, as in *Baltimore Lutheran*, there were general statements from the principal that religion was taught in every course and teachers were expected to integrate faith, prayer and biblical principles in their classes. Aside from this vague and generic testimony, no evidence was presented regarding how, when or in what ways Unity's teachers integrate Christian principles into their teaching. Nor was there any evidence regarding the substantive content of Unity's classes or the instructional methods used by its teachers. Because Unity did not provide evidence showing how religion was included in its classes by its teachers, Unity did not meet its burden of proving that it was operated primarily for religious, rather than educational, purposes. See *id.* Unity has failed to present sufficient evidence to prove that it was operated primarily for a religious purpose.

---

[1]I am mindful that religious instruction may be more easily integrated in some classes than others. For courses like mathematics, less proof of religious integration may be required.